ABRAHAM RACHMAN ET AL. V. J. F. CLAPP ET AL.

FILED FEBRUARY 16, 1897. No. 7022.

1. **Sales: PAYMENT OF ANTECEDENT DEBT.** A bill of sale received in payment of an antecedent debt protects the vendee to the same extent as had there been a new consideration, if taken in good faith and without an intention to defraud the other creditors of the vendor.

2. **Attachment: SERVICE OF PROCESS.** Jurisdiction over attached property is not lost by failure to serve process in the main case so long as the action remains pending. (*Darnell v. Mack*, 46 Neb., 740.)

ERROR from the district court of Douglas county. Tried below before SCOTT, J. *Reversed.*

*Kennedy, Gilbert & Anderson,* and *C. P. Halligan,* for plaintiffs in error.

*B. N. Robertson, Martin Langdon, Cavanagh & Thomas, Rich, O'Neill & Sears,* and *McClanahan & Halligan, contra.*

NORVAL, J.

This was a suit in replevin to recover a stock of groceries, store fixtures, and other personal property. A separate verdict was returned in favor of each defendant covering different portions of the chattels, and from the judgments rendered thereon, plaintiffs have prosecuted error proceedings to this court.

Plaintiffs claim to be the absolute owners of the property in controversy, while the defendants seized the same under certain writs of attachment issued against H. S. Rachman, plaintiffs' son, who at one time was the owner of the chattels, and the defendants insist that he had not parted with his title thereto at the time the levies in question were made. The disputed question of fact in the case was: Did the plaintiffs, or their son, own the property? It is undisputed that one Milford E. James

was the owner of a grocery stock and fixtures located at 1921 Sherman avenue, in the city of Omaha, which on the 1st day of September he sold and conveyed by bill of sale to B. Rachman, one of the plaintiffs, and on the same day the latter, by bill of sale, conveyed the same property to her son, the said H. S. Rachman, who immediately took possession and carried on the business, until January 27, 1893, replenishing the stock from time to time by purchases. On the date last aforesaid, the son conveyed to the plaintiffs, by bill of sale, the stock then on hand, the fixtures and some other chattels, the same being the property now involved in this suit, in payment of an indebtedness of something less than $1,400, the larger portion of which represented the amount due from H. S. Rachman to his mother for the original purchase price of the goods. Just preceding the last transfer the stock was inventoried by the father, his son, and two clerks of the latter, consuming in doing so one day and a part of one night. The bill of sale was filed for record in the office of the county clerk, and possession of the property taken by the plaintiffs. Subsequently, the several writs of attachment were issued and levied thereon. The son was insolvent at the time. The defendants introduced testimony tending to show that one of the plaintiffs, Abraham Rachman, at the time the levies were made, stated that he had always owned the stock of goods and that the son was conducting the business for the father; also, that he, Abraham, told the defendant Clark that the son owned the horses levied upon. The latter alleged statement is denied by Abraham, but the other stands uncontradicted. The record discloses that immediately prior to the making of the last bill of sale McCord, Brady & Co. sold on time and delivered to H. S. Rachman twenty sacks of flour, which have never been paid for. Upon this feature of the case the court gave the following instruction to the jury, which is assigned as error:

"If you find from the evidence that the twenty sacks of flour were purchased a short time before the date

when the plaintiff claims to have bought the property back from his son, * * * and you further find that the defendant has shown by a preponderance of the evidence that the twenty sacks of flour were the property of the intervenors, McCord, Brady & Co., and that the same has not been paid for and the value thereof, then your verdict should be for the intervenors, McCord, Brady & Co., upon their petition of intervention as to the twenty sacks of flour. And you are further instructed that if when this flour was purchased by H. S. Rachman, whether he was the actual owner of the store or not, if he was in failing circumstances, unable to meet his obligations, and you further find that the plaintiffs knew that fact, or had reason to know the fact; that is, if a reasonably cautious and prudent man would have known the fact that H. S. Rachman purchased the grocery, including the flour, if you find he did purchase it back, that H. S. Rachman was indebted, and unable to pay his debts, or, if you further find that at the time of the alleged purchase by Abraham Rachman he took it back, took the store back for an antecedent debt, knowing, or having reason to know, if he did know or have reason to know that H. S. Rachman was in failing circumstances and unable to pay his debts, such transaction on the part of Abraham Rachman would not give him the right of possession of this flour as against McCord, Brady & Co., if they have established the facts as I have stated they are required to."

This instruction was erroneous and prejudicial. There was no evidence to show that McCord, Brady & Co. owned the flour in controversy; hence it was error to assume that there was evidence before the jury from which they could find the existence of such ownership. It was a fact that the flour was sold to young Rachman recently before the transfer to plaintiffs and payment therefor had not been made, but such fact alone did not authorize said firm to obtain possession of the property, or constitute it the owner thereof. Nor is it the law that the plaintiffs were

not entitled to the possession of the flour because H. S. Rachman was in failing circumstances; that plaintiffs had notice thereof or of facts sufficient to put them upon inquiry and that they took the stock, including the flour, in satisfaction of debt then due them from their son. It is a well recognized principle of law in this state, that a pre-existing debt is a good consideration for a conveyance of property, and if it was taken in good faith and without any fraudulent purpose it will be upheld even though the consideration therefor was an antecedent debt. (*Ward v. Parlin,* 30 Neb., 376; *Chaffee v. Atlas Lumber Co.,* 43 Neb., 224; *State Bank of Lushton v. Kelley Co.,* 49 Neb., 242; *Steen v. Stretch,* 50 Neb., 572.) There was ample evidence to authorize a finding that the bill of sale to plaintiffs was executed in good faith, without any intention on their part to defraud the other creditors of the grantor, and we cannot say that the jury would not have so found had it not been for the above portion of the charge of the court.

Counsel for plaintiffs assail the fifth instruction, which reads as follows:

"5. You are further instructed that if you find from the evidence that there was a bill of sale executed by Henry S. Rachman to his mother for this property, or any portion of it, involved in these proceedings, and such bill of sale was never recorded, and you further find that these parties who gave credit to Henry S. Rachman had no actual knowledge of the existence of such bill of sale, and gave credit to Henry S. Rachman not knowing such instrument to be in existence, such instrument is a fraud, and would be a fraud upon the creditors who in good faith gave Henry S. Rachman credit on the belief that no such instrument in fact existed. It is admitted that exhibit number '4' was never recorded, and that is the instrument alluded to in this instruction."

The foregoing was erroneous for the reason, among others, plaintiffs did not predicate title upon the bill of sale dated September 1, 1890,—the one alluded to in the

charge,—but upon the one executed January 27, 1893; hence the creditors of Henry S. Rachman were not prejudiced by the existence of the bill of sale of the date first aforesaid.

Lastly, it is urged that the attachment proceedings were invalid because no service of summons was ever obtained upon the defendant in the main actions in which the attachments were sued out. We have held the opposite to be true in *Darnell v. Mack*, 46 Neb., 740, which decision was right, and is adhered to. Judgment reversed, and cause remanded for a new trial.

REVERSED AND REMANDED.