BETTY ROGERS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

BETTY ROGERS, O. N. BEASLEY, OSCAR LAWLER, JAMES K. BLAKE, EXECUTORS OF THE ESTATE OF WILL ROGERS, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 84895, 84896. Promulgated May 18, 1938.

*Claude I. Parker, Esq., John B. Milliken, Esq., Bayley Kohlmeier, Esq.,* and *L. A. Luce, Esq.,* for the petitioners.
*DeWitt M. Evans, Esq.,* for the respondent.

### OPINION.

MELLOTT: These consolidated proceedings involve deficiencies in income taxes for the year 1933 in the amount of $17,055.90 in Docket

No. 84895 and $16,894.61 in Docket No. 84896. The respondent decreased a marital community loss, one-half of which was deducted by each member of the community as an ordinary loss, from $57,643.46 to $54,055.25, and treated it as a capital loss sustained equally by each member of the community. The only question involved is whether such loss is a capital loss or an ordinary loss.

The proceedings were submitted upon two stipulations of facts which, except for the purely formal parts, are substantially the same. These stipulations are included herein by reference, a combined summary being sufficient for the purpose of the report.

The petitioner, Betty Rogers, a resident of California, is the widow of Will Rogers, who died testate, a resident of California, on August 15, 1935. She, and the others shown in the caption in Docket No. 84896, were appointed executors of the estate of the decedent by the Superior Court of the State of California in and for the County of Los Angeles, on September 17, 1935.

During September 1927 the decedent and his wife purchased for profit certain business real estate situated in the county of Los Angeles, California, at a price of $105,000, payable as follows: $15,000 cash at the time of purchase, the assumption of a note in the amount of $52,000, which was secured by a mortgage on such property and became due and payable in 1930, and the giving of their promissory note for the balance of $38,000, secured by a trust deed on the property.

The decedent and his wife paid the $15,000 cash and prior to 1933 paid in full the $52,000 note.

The note for $38,000 and the beneficial interest under the deed of trust which secured it were transferred and assigned to the California Trust Co., a corporation. The note became due and payable on August 19, 1932.

On August 25, 1932, payment of the note and accrued interest thereon was demanded of decedent and his wife and notice was given that, unless the principal and interest were paid, the holder of such note would proceed to enforce its rights under the provisions of the deed of trust given to secure payment of it.

Thereafter it was agreed by and between decedent and his wife and the holder of the $38,000 note and trust deed that the property be conveyed by the former to the latter and that the note be canceled and surrendered. Thereafter the property was reconveyed by the Title Guarantee & Trust Co. to the decedent and his wife and on April 21, 1933, they transferred and conveyed it to the California Trust Co., and the $38,000 note was surrendered to decedent and his wife and canceled.

In addition to the $67,000 paid by the decedent and his wife upon the purchase price of the property they also paid, prior to April 21,

1933, escrow expenses in the amount of $212.02, or a total of $67,-212.02. For the years 1927 to 1932, inclusive, they were allowed depreciation on the improvements on the property in the total amount of $13,156.77. Their total unrecovered cash investment in such property at the time of its conveyance to the California Trust Co. was $54,055.25. The decedent and his wife each sustained a loss in 1933 from the transaction in the amount of $27,027.62.

The decedent and his wife filed separate returns for 1933. They computed a loss on the transaction in the amount of $57,643.46 and each deducted one-half of that sum, or $28,821.73, as an ordinary loss, under the provisions of section 23 (e) of the Revenue Act of 1932. The respondent reduced the amount of the loss to $54,055.25, and, in recomputing the tax liability of each of them, treated the loss as a capital loss within the meaning of section 101 of the Revenue Act of 1932. The deficiencies result from respondent's determination that the loss was a capital loss.

The pertinent provisions of the Revenue Act of 1932 are shown in the margin.[1]

Petitioners argue that Rogers and his wife did not "have whole title to the property * * * but * * * merely an equity and a right to receive whole and complete title on completion of payment of the purchase price." That may be true; however, the property

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(e) LOSSES BY INDIVIDUALS.—Subject to the limitations provided in subsection (r) of this section, in the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

\* \* \* \* \* \* \*

(2) if incurred in any transaction entered into for profit, though not connected with the trade or business. \* \* \*

SEC. 101. CAPITAL NET GAINS AND LOSSES.

\* \* \* \* \* \* \*

(b) TAX IN CASE OF CAPITAL NET LOSS.—In the case of any taxpayer, other than a corporation, who for any taxable year sustains a capital net loss (as hereinafter defined in this section), there shall be levied, collected, and paid, in lieu of all other taxes imposed by this title, a tax determined as follows: a partial tax shall first be computed upon the basis of the ordinary net income at the rates and in the manner as if this section had not been enacted, and the total tax shall be this amount minus 12½ per centum of the capital net loss; but in no case shall the tax of a taxpayer who has sustained a capital net loss be less than the tax computed without regard to the provisions of this section.

(c) DEFINITIONS.—For the purposes of this title—

\* \* \* \* \* \* \*

(2) "Capital loss" means deductible loss resulting from the sale or exchange of capital assets.

\* \* \* \* \* \* \*

(6) "Capital net loss" means the excess of the sum of the capital losses plus the capital deductions over the total amount of capital gain.

\* \* \* \* \* \* \*

(8) "Capital assets" means property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business. \* \* \*

was deeded to them subject to the indebtedness which they assumed and paid, and it is stipulated that they claimed and were allowed depreciation on the improvements on it in the total amount of $13,-156.77. The property was acquired in a transaction entered into for profit. It will be noted that " 'capital assets' means property held by the taxpayer for more than two years." Under the facts as stipulated, we think that the conclusion is inescapable that the real estate was "held" for more than two years within the purview of the statute.

Petitioners insist, however, that even though the property was a capital asset, the loss sustained upon its disposition was not a capital loss, as defined by the statute, because it was neither sold nor exchanged. Having decided that the property was a capital asset, the only remaining question is whether it was sold or exchanged.

On brief petitioners argue that when the entire transaction was completed they were left with nothing which they did not have prior to entering into the contract or purchase and that they had suffered an actual loss in the amount of $54,055.25 ($67,212.02 less $13,156.77) ; that in construing or interpreting a statute the ordinary meaning of the words used therein should be taken, citing *Old Colony Railroad Co.* v. *Commissioner*, 284 U. S. 552; and that the transaction in question did not involve a "sale or exchange" within the ordinary meaning of these words because they connote an acquisition of property by the bargaining parties through the exercise of a free will to buy and sell rather than the compromise of an outstanding indebtedness, the enforced collection of which had been threatened by means of legal proceedings.

We agree with petitioners that in construing or interpreting a statute the ordinary meaning of the words used should be taken. "A sale, in the ordinary sense of the word is a transfer of property for a fixed price in money or its equivalent." *Iowa* v. *McFarland*, 110 U. S. 471, 478. "An exchange of property is a mutual transfer of one or more pieces of property for property other than money." 23 C. J. 184. " 'The distinction between a sale and exchange of property is rather one of shadow than of substance. In both cases the title to property is absolutely transferred; and the same rules of law are applicable to the transaction, whether the consideration of the contract is money or by way of barter.' " *Hale* v. *Helvering*, 85 Fed. (2d) 819.

Prior to the transaction here involved petitioners had paid for the real estate $67,212.02 in cash, and had given their note for $38,000 to the vendor. This note had been transferred and assigned by the vendor to the California Trust Co. It is apparent, therefore, that the real property cost petitioners $105,212.02 and this amount (less de-

preciation allowed, $13,156.77) was their basis for gain or loss upon its sale or other disposition. We are not impressed with petitioners' argument that when they transferred the property to their creditor they merely paid their debt of $38,000, and that therefore there was no sale or exchange. We agree that they paid a debt; but the payment of a debt does not entitle a taxpayer to a loss deduction. Petitioners' claim for a deduction is based on the fact that they made a disposition of property and thereby sustained a loss. It can not be said that they received no consideration because then their loss would have been $92,055.25 ($105,212.02 less $13,156.77) and not $54,055.25. By reason of the transfer of the property to their creditor petitioners were released from their promise to pay $38,000, and their creditor relinquished its right to collect this amount. In our opinion the transaction should be treated either as a sale of petitioners' right, title, and interest in the property for the price of their obligation or as an exchange of real estate for the obligation, both properties having an equal value. We prefer to regard the transaction as a sale. This view is supported by a decision of the Supreme Judicial Court of Massachusetts in *Gallus* v. *Elmer*, 193 Mass. 106; 78 N. E. 772. In that case Gallus, who conducted a butcher and grocery business, sold certain fixtures, tools, utensils, and goods used in carrying on that business to one Kopec for $500, of which $100 was paid in cash, and the balance was to be paid on June 9, 1905. On June 9 Gallus demanded payment of the amount due, which was not paid. Kopec stated he was willing that Gallus should take all of the property in payment of the debt due, and an instrument was prepared reciting that Kopec, in consideration of $400 paid by Gallus, sold, transferred, and delivered all of the property back to Gallus. The question arose whether the transfer of the property to Gallus in payment of the debt due constituted a sale under the "Bulk Sales" act. In holding that it did the court said:

* * * While it is true that in its strictest sense a sale is a transfer of personal property in consideration of money paid or to be paid, still in the interpretation of statutes it is often held to include barter and any transfer of personal property for a valuable consideration. "In a general and popular sense, the sale of an article signifies the transfer of property from one person to another, for a consideration of value, without reference to the particular mode in which the consideration is paid." Bigelow, C. J., in *Howard* v. *Harris*, 8 Allen 297, 299. * * *

In support of their contention that the transaction was neither a sale nor an exchange petitioners rely upon *Hale* v. *Helvering, supra; Commonwealth, Inc.*, 36 B. T. A. 850; and *Dallas Transfer & Terminal Warehouse Co.* v. *Commissioner*, 70 Fed. (2d) 95.

In *Hale* v. *Helvering, supra*, the taxpayers in 1925 sold an orange grove for the sum of $60,000. Title was transferred to the

purchaser upon the payment of $20,000 in cash and the execution and delivery of $40,000 in notes secured by first mortgage. The taxpayers each reported their pro rata share of the profit upon this transaction in 1925, and paid the tax thereon. Upon maturity of the notes in 1927, the maker, although financially able to pay, refused to do so. A suit was instituted during the year 1929 to collect in the amount of $22,418.24, but prior to judgment, and during that year, a settlement was agreed to which resulted in a loss to the taxpayers of $7,497.22. In holding that the loss was an ordinary loss the Court of Appeals for the District of Columbia said:

Accepting the definitions relied upon by the petitioner as constituting the ordinary meaning of the words in question, such definitions do not include the disposition of the notes under the facts here. There was no acquisition of property by the debtor, no transfer of property to him. Neither business men nor lawyers call the compromise of a note a sale to the maker. In point of law and in legal parlance property in the notes as capital assets was extinguished, not sold. In business parlance the transaction was a settlement and the notes were turned over to the maker, not sold to him. In *John H. Watson, Jr.,* v. *Commissioner of Internal Revenue,* 27 B. T. A. 463, overruling *Henry P. Werner* v. *Commissioner of Internal Revenue,* 15 B. T. A. 482, it was held that the payment at maturity, of the face amount of bonds purchased at a premium, was not a sale or exchange resulting in a capital loss. If the full satisfaction of an obligation does not constitute a sale or exchange, neither does partial satisfaction. * * *

The court held, as this Board had held, "that the compromise with the maker, who was able to pay them, of promissory notes, for less than their face value, does not constitute a sale or exchange of capital assets."

While we agree with the court that under the facts of the *Hale* case the *compromise* of a note was not a "sale" or an "exchange", because the property in the notes was *extinguished*, and not sold, we do not believe that this case is controlling of the instant proceedings. Petitioners disposed of real property. They are claiming the right to a loss deduction for the reason that the amount realized was less than the cost of the property to them. No compromise of a note is involved. Petitioners gave up all of their right, title, and interest in the real property for the equivalent of $38,000, and thereby reduced the amount of the loss resulting from their investment in the property by that amount. If petitioners had transferred the property for $38,000 in cash and then had used the cash to satisfy their indebtedness, it is clear that they would have made a sale of their property. We do not believe that the situation is changed where the property is transferred directly to the creditor in satisfaction of the indebtedness. Cf. *United States* v. *Hendler,* 302 U. S. 680; *E. F. Simms,* 28 B. T. A. 988, 1030. We do not construe the decision in the *Hale* case as meaning that the surrender of notes or cancella-

tion of an indebtedness is not sufficient or proper consideration to support a sale. Many courts have held that the extinguishment of a preexisting debt may constitute a valuable consideration for a sale of property. *Ferguson* v. *Larson* (Cal.), 33 Pac. (2d) 1061; *Bank of Centralia* v. *Chicago, Burlington & Quincy Railroad Co.*, 245 Ill. App. 211; *David Bradley & Co.* v. *Kingman Implement Co.*, 79 Neb. 144; 112 N. W. 346; *Rachman* v. *Clapp*, 50 Neb. 648; 70 N. W. 259; *Billings* v. *Warren*, 21 Tex. Civ. App. 77; 50 S. W. 625.

In *Commonwealth, Inc., supra*, also cited and relied upon by petitioners, the owner of realty, subject to a mortgage, deeded the property to the mortgagee without consideration and thereby sustained a loss. We held that the loss so sustained was an ordinary loss, and not a capital loss, and, among other things, said:

* * * The purported release of liability under the mortgage was of no benefit to the petitioner, for it had no liability under the mortgage. Neither the petitioner nor its grantor assumed the mortgage liability, but took title, subject to it. Hence, there was no personal liability on the part of the petitioner. *Hulin* v. *Veatch*, 148 Or. 119; 35 Pac. (2d) 253; *Metropolitan Bank* v. *St. Louis Dispatch Co.*, 149 U. S. 436; *Fulton Gold Corporation*, 31 B. T. A. 519. Inasmuch as there was in fact no consideration to the petitioner, the transfer of title was not a sale or exchange. The execution of the deed marked the close of a transaction whereby petitioner abandoned its title. Cf. *A. J. Schwarzler Co.*, 3 B. T. A. 535, *Greenleaf Textile Corporation*, 26 B. T. A. 737, holding that a taxpayer does not sustain a deductible loss of the value of real estate while retaining title to it.

The instant proceedings are clearly distinguishable from *Commonwealth, Inc., supra*. In that case the taxpayer received nothing in consideration of the transfer of the property to the mortgagee. Here, however, the taxpayers received a consideration of $10 and "in addition * * * full satisfaction of all obligations secured by the deed of trust [the $38,000 note]." The deed recites that "the consideration received by the grantors is equal to the fair value of grantors interest in said land."

The remaining case relied upon by the petitioners is *Dallas Transfer & Terminal Warehouse Co.* v. *Commissioner, supra*. There the taxpayer leased a warehouse for 20 years at a rental of $7,000 a month. By September 1928 the taxpayer owed its lessor $107,880.79 and was in an insolvent condition. It entered into an agreement with its lessor under the terms of which it conveyed to the latter certain property in which it had an equity of $17,507.20, and the lessor canceled the balance of the debt, charging it off as worthless. The Circuit Court of Appeals for the Fifth Circuit, in holding that the transaction did not constitute income to the taxpayer, said:

* * * The transaction was not in form or substance a sale for $107,880.77 of property which had an appraised value of $17,507.20. In effect the transaction was similar to what occurs in an insolvency or bankruptcy proceeding

when, upon a debtor surrendering, for the benefit of his creditors, property insufficient in value to pay his debts, he is discharged from liability for his debts. This does not result in the debtor acquiring something of exchangeable value in addition to what he had before. There is a reduction or extinguishment of liabilities without any increase of assets. There is an absence of such a gain or profit as is required to come within the accepted definition of income. * * * It hardly would be contended that a discharged insolvent or bankrupt receives taxable income in the amount by which his provable debts exceed the value of his surrendered assets. * * * Taxable income is not acquired by a transaction which does not result in the taxpayer getting or having anything he did not have before. Gain or profit is essential to the existence of taxable income. A transaction whereby nothing of exchangeable value comes to or is received by a taxpayer does not give rise to or create taxable income. * * *

In our opinion there is nothing in the decision of the court which is contrary to the conclusion we have reached in the instant proceedings. We are convinced that petitioners made a sale of a capital asset to their creditor. We therefore hold that the respondent's determination that the loss sustained was a capital loss is correct.

Reviewed by the Board.

*Judgment will be entered for the respondent.*