W. F. TAYLOR COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 89597. Promulgated September 20, 1938.

*Sidney M. Cook, Esq.*, for the petitioner.
*John E. Marshall, Esq.*, for the respondent.

OPINION.

BLACK: There is very little dispute, if any, between the parties in this proceeding as to the facts. The dispute arises as to the legal consequences of the facts. Petitioner contends that the facts prove the ascertainment of worthlessness and the charge-off in the year 1933 of a debt amounting to $79,303.26 which it held against the Ogden Co., and that as a consequence it is entitled to a deduction of this amount from its gross income under the provisions of section 23 (j) of the Revenue Act of 1932.

The Commissioner concedes that petitioner, prior to the sale of the Ogden Co. stock, held a bona fide debt against the Ogden Co. of $79,303.26 and that petitioner charged this debt off its books in the year 1933. The Commissioner contends, however, that petitioner did not ascertain the said debt to be worthless in 1933, and that on the contrary the debt was not worthless but was voluntarily canceled by petitioner as an act of debt forgiveness and petitioner is not entitled to the deduction which it claims or to any part thereof.

For reasons which we shall later state in more detail, we think the Commissioner must be sustained in his contentions as to $5,083.97 of the debt charged off. As to the balance of the debt, to wit, $74,-219.29, we think the Commissioner should not be sustained and that petitioner must prevail.

If, as respondent contends, the facts show a case where a creditor voluntarily canceled the debt of a solvent debtor, it would require no citation of authority to support respondent's contention that no deduction is allowable. A creditor can not voluntarily forgive a debt against a solvent debtor and then be heard to claim a deduction for a bad debt ascertained to be worthless and charged off in the taxable year. Such action would be a perversion of the statute. But we have no such situation in the instant case. The uncontradicted evidence shows that petitioner had guaranteed the payment of all the outside debts of the Ogden Co. In fact it is clear from the evidence in the case that the Ogden Co. operated on the credit of petitioner and the Taylor estate.

At the time in question, the Ogden Co. owed to the bank and outside creditors the total sum of $54,898.69. This was exclusive of the $79,303.26 which it owed to petitioner and the $25,000 which it owed to the Taylor estate, all amounting to the total sum of $159,201.95 of indebtedness. The value of the total assets of the Ogden Co. was $59,982.66.

The Frank Grocery Co., Ltd., agreed to purchase the shares of stock of the Ogden Co. and pay for them $59,982.66, the value of the underlying assets. This payment was to be made in the following manner: The Frank Grocery Co., Ltd., assumed and agreed to pay the

bank $25,000 and to pay all the other indebtedness of the Ogden Co. to outside creditors, amounting to $29,898.69. The total thus to be paid amounted to a gross of $54,898.69.

When these amounts were paid, the Frank Grocery Co., Ltd., still owed $5,083.97 of the agreed purchase price of the Ogden Co. stock, which was paid in cash to petitioner. Petitioner agreed to cancel and charge off all its claims against the Ogden Co. Petitioner subsequently paid this $5,083.97 cash which it received to the Taylor heirs, who were the owners of a majority of the Ogden Co. shares of stock. Petitioner, of course, had the right, if it chose to do so, to pay this $5,083.97 over to the Taylor heirs, but it can not claim to that extent a deduction of the debt against the Ogden Co. charged off. It could at least have collected that much of the debt and therefore its failure to do so must be attributed to its own voluntary act. The stockholders of the Ogden Co. were not entitled to receive anything for their stock until the creditors were paid, and petitioner was a creditor in the amount of $79,303.26 and should have applied as a credit thereon the $5,083.97 cash received.

But petitioner can not be charged with the $54,898.69 paid over by the Frank Grocery Co., Ltd., the purchasers, to the bank and other outside general creditors. These were debts which petitioner had unconditionally guaranteed and had to be paid in full before petitioner was entitled to collect anything on the indebtedness of the Ogden Co. to it. Therefore when all these debts were paid there was nothing left which petitioner could apply to its claim for $79,303.26, except the $5,083.97 paid in cash which we have already disposed of above, and the balance of petitioner's claim, amounting to $74,219.29, was thereupon definitely ascertained to be worthless.

As to this $74,219.29, petitioner has never been reimbursed in any way and is entitled to a deduction as a debt ascertained to be worthless and charged off within the taxable year. Cf. *Deeds* v. *Commissioner*, 47 Fed. (2d) 695, reversing the Board on this point in *E. A. Deeds*, 14 B. T. A. 1140.

The transactions disclosed by the evidence in the instant case were not carried out in pursuance of any scheme of tax avoidance. They were parts of a bona fide business transaction. As said by the court in the *Deeds* case:

The proper answer to this question depends, we think, upon the purpose and reasonableness of the action taken. It cannot be used as a subterfuge, merely to avoid the payment of taxes nor as a means of benefaction and bounty; but, if the step be taken in the interest of the taxpayer, in the exercise of an experienced business judgment, and in an effort to avoid even greater and otherwise certain losses, we cannot see that the taxpayer should be precluded from taking the deduction, because the amount of the loss then to be suffered was thus definitely ascertained, and the fact of such partial loss made certain

by the action of the taxpayer himself. The facts are none the less clear that, after cancellation, the debts were in fact worthless, were realized to be so by the taxpayer, and were charged off on his books.

The facts in the instant case are stronger for petitioner than the facts were for the taxpayer in the *Deeds* case. In the *Deeds* case the taxpayers retained a substantial continuing stock ownership interest in the Smith Gas Engineering Co. long after they had canceled and charged off $293,970 of their indebtedness against the corporation. Notwithstanding this continuing stock ownership interest, the court held that the taxpayers should be allowed the deduction for their debt thus canceled and charged off. In the instant case petitioner owned no interest whatever, nor did its stockholders in the Ogden Co. after the debt was canceled and charged off.

Now it is, of course, true that if when petitioner canceled and charged off its claim of $79,303.26 against the Ogden Co. it had a contract of reimbursement from some other solvent source, it would not be entitled to the claimed deduction. Cf. *Glendinning, McLeish & Co.* v. *Commissioner*, 61 Fed. (2d) 950, affirming 24 B. T. A. 518.

But the action of the banks in permitting petitioner and the Taylor heirs to continue to hold 6,000 bales of cotton in the hope of there being later a rising market, a circumstance strongly relied upon by respondent in his brief, was no contract for reimbursement. True, it turned out that petitioner and the Taylor heirs were fortunate in their judgment to hold the cotton. Later there was a rising market and petitioner and the Taylor heirs succeeded in selling the cotton for $100,000 more than they could have sold it when the bank first demanded that it be sold. But this increase in price must be accounted for by them in full in determining gain or loss on the sale of the cotton. Their judgment to part with all their interest in the Ogden stores and apply the proceeds to the payment of the bank's indebtedness and other outside indebtedness of the Ogden Co. on which they were guarantors proved to be good, but there was no certainty that it would be so. The market for cotton might just as easily have declined further, thereby increasing their losses.

Such transactions, though intimately connected, are separate and are not parts of the same transaction; they must be separately treated for tax purposes and can not deprive petitioner of its right to a deduction of that part of the indebtedness of the Ogden Co. to petitioner which it ascertained to be worthless in 1933 and charged off. This we have already held to be $74,219.29.

Now if respondent's contention that petitioner should be deprived of the deduction of this bad debt charge-off because it was incurred as a part of the consideration for continuing to hold the 6,000 bales of cotton in question is correct, then the amount charged off would become a part of the cost of the cotton and would be recovered tax-

free when the cotton was sold. We think this treatment of the transaction would be artificial and untenable and should not be indulged in. We do not have the cotton transaction before us for consideration in this proceeding, but we dare say that, when petitioner came to compute its gain or loss on the sale of the 6,000 bales of cotton, the Commissioner did not allow petitioner to use, as a part of its basis of cost of the cotton, the $79,303.26 or any part of its claim therefor against the Ogden Co. charged off in 1933. There would be no grounds for adding to petitioner's cost of the 6,000 bales of cotton the amount of its indebtedness against the Ogden Co. charged off. The connection between the two transactions would be too remote and incidental to justify such treatment of them.

So the situation comes down to this: Petitioner has had an actual bona fide loss to the extent of $74,219.29 in its charge-off of the Ogden Co. indebtedness and if it does not get the deduction now, it will never get it. We think it is entitled to the deduction now.

As said by the court in the *Deeds* case:

* * * This was not the ordinary case of mere forgiveness of indebtedness. It was not a gift. It was the performance of an act which highly experienced and skillful business men honestly believe to be to their own best interests in the avoidance of loss and therefore to the interest of the government in maintaining income. But it nevertheless was an event which definitely and permanently prevented the collection of the debt. Compare the very closely analogous situation disclosed in *Jones* v. *Commissioner*, 38 Fed. (2d) 550 (C. C. A. 7).

While under our decision petitioner's claimed loss as deducted on its return is reduced from $79,303.26 to $74,219.29, this reduction is not enough to result in any deficiency. Petitioner's net loss shown on its return was $25,329.26. The effect of our decision is to reduce this net loss to $20,245.29.

*Decision will be entered for petitioner.*