THOMAS G. CARTER and MARJORIE A. CARTER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Carter v. Commissioner
Docket No. 3901-79.
United States Tax Court
T.C. Memo 1981-126; 1981 Tax Ct. Memo LEXIS 617; 41 T.C.M. (CCH) 1119; T.C.M. (RIA) 81126; March 19, 1981. Thomas G. Carter, pro se. Ralph Jones and William S. Miller, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined a deficiency of $ 8,171.00 in petitioners' Federal income tax for 1974. Because of concessions, the issues to be determined are whether petitioners are entitled to a bad debt deduction under section 166 [1] for notes they forgave in connection with a stock sale and whether petitioners' *618 income from compensation was overstated on their return. FINDINGS OF FACT Petitiners Thomas G. Carter and Marjorie A. Carter, husband and wife, resided in Caldwell, Idaho, when they filed their petition in this case. In October 1966, petitioner Thomas G. Carter (hereinafter "Carter") and two other individuals incorporated V.S.C. Wholesale Warehouse Co. ("VSC"). Immediately prior to October 17, 1974, the stock of VSC was ehld as follows: Petitioners
25 shares
Troy Vance ("Vance")
25 shares
William Howard Olson
25 shares
("Olson")
On October 17, 1974, petitioners sold all of their stock in VSC to Vance and Olson. The total contract price was $ 50,000. Pursuant to the contract of sale, petitioners received property and cash totaling $ 12,500 at closing and notes for the $ 37,500 balance to be paid in equal annual installments due in 1975, 1976, and 1977. Petitioners' VSC stock was placed in an escrow account to guarantee performance by the buyers. On and just prior to the date of sale, Carter held *619 three promissory notes drawn on VSC. Two of the notes had face values equaling their basis to Carter of $ 2,500 and $ 11,346.08, respectively. A third note for $ 6,000 represented a bonus to Carter for his services as a director during VSC's fiscal year ended October 31, 1973. Carter received the note in 1973 but did not report it as income on his 1973 tax return. The contract for the sale of petitioners' VSC stock included the following covenant: 6. CANCELLATION OF NOTES: As and for further consideration herein, Seller [petitioner(s)] agrees to cancel all Promissory Notes made payable from V.S.C. Wholesale Warehouse Co. to Seller. Seller further agrees, in consideration of this contract, that this satisfies all debts owed by V.S.C. to Seller. Thus, the agreement completely extinguished VSC's liability to Carter on all three notes. VSC was profitable from 1966 through 1974, and its net assets over liabilities on October 31, 1974, totaled $ 135,779. On October 21, 1974, VSC's remaining stockholders, Olson and Vance, met to elect a new board of directors. The stockholders also agreed to "reissue" new notes of $ 9,923.04 each to Olson and Vance [2] to "replace" the *620 three promissory notes issued to Carter which had been canceled as part of the stock sale. The minutes state the "replacement" notes were issued in return for Olson and Vance's agreement to indemnify the corporation should Carter's "lost" notes turn up, which makes little sense as the notes had been canceled in writing for consideration. A more understandable effect of the "reissuance" was to place Olson and Vance in the same position as if they had purchased Carter's VSC notes from him directly. [3]
After the sale of petitioners' VSC stock, Carter's relationship with Olson and Vance was not amicable. Olson and Vance sued Carter alleging breach of an implied covenant not to compete with VSC. The lawsuit was settled in January 1977 when petitioners agreed to accept $ 15,000 in full satisfaction of the $ 37,500 balance outstanding *621 on the contract of sale. Petitioners' 1974 tax return, Carter's Form W-2 for that year from VSC, and the books and records of VSC all show Carter received $ 33,285 in gross wages from VSC from which $ 5,286.90 in Federal income taxes was withheld. At trial Carter testified this figure was $ 8,000 too high. Since receiving his 1974 Form W-2, Carter has claimed that VSC's officers, with whom he was no longer on friendly terms, reported for tax purposes a payment that was too high or was never made. VSC's books and records are not perfectly clear because the payment or payments in question were recorded slightly out of time sequence for no apparent reason, but the records do show Federal withholding and F.I.C.A. taxes were deducted from the disputed payment in amounts that are reasonable and consistent with the payment actually having been made. On their 1974 joint return, petitioners deducted $ 18,846 [4] on the ground that canceling Carter's VSC notes entitled them to a bad debt deduction. Petitioners' basis in their VSC stock was $ 2,500, and they elected to report their gain from the sale on the installment basis. Accordingly, petitioners reported 95 percent, or $ 47,500/50,000, *622 of the $ 12,500 they received in 1974 as long-term capital gain. In his statutory notice respondent disallowed the $ 18,846 bad debt deduction. Respondent also increased petitioners' income by treating $ 6,000 of the amount petitioners received from the stock sale as directors fees paid by VSC in 1974. Finally, respondent decreased petitioners' long-term capital gain by (1) treating the total contract price for the stock sale as $ 44,000 ($ 50,000-6,000 directors fees), (2) treating the amount realized in 1974 as $ 6,500 ($ 12,500-6,000), and (3) treating a portion of that amount realized as a payment for or return of capital on the two notes in which petitioner had basis. [5]
*623 OPINION Because of concessions, the only issues presented are whether petitioners are entitled to a bad debt deduction for the canceled notes and whether petitioners overstated their income from compensation on their return. Section 166 allows a deduction for the economic loss incurred when a valid and enforceable debt owed the taxpayer becomes worthless during the taxable year. Sec. 1.166-1(a) and (c), Income Tax Regs. There are a number of differences in the treatment of business debts and nonbusiness debts, but they do not concern us here. See generally sec. 166(d)(1)(A); sec. 1.166-5, Income Tax Regs.; United States v. Generes,405 U.S. 93 (1972). As part of the sale of petitioners' VSC stock, Carter canceled three notes from VSC totaling $ 19,846. Petitioners argue they are entitled to deduct the value of the notes as debts which became worthless during the taxable year. We disagree. The debts were canceled not because they were worthless, but as partial consideration for the $ 50,000 petitioners received in the stock sale. Moreover, VSC was not only solvent, its finances were very healthy. In short, petitioners sustained no economic loss when *624 Carter cancelled the notes; the deal was profitable. Compare Commissioner v. Spreckels,120 F.2d 517 (9th Cir. 1941); W.F. Taylor Co. v. Commissioner,38 B.T.A. 551 (1938). Seen in this light, it does not matter whether the notes are viewed as having been canceled (section 166) for Vance and Olson's benefit as stockholders or as having been sold (section 165) to them dirctly. In either case, petitiners suffered no loss. We therefore hold they are entitled to no deduction. American Felt Co. v. Burnet,58 F.2d 530 (D.C. Cir. 1932); Davies v. Commissioner,54 T.C. 170, 176 (1970). The second issue is whether Carter's income from VSC was overstated on petitioners' return. We hold petitioners have failed to carry their burden of proof. See Rule 142(a), Tax Court Rules of Practice and Procedure; Welch v. Helvering,290 U.S. 111 (1933). We are not unsympathetic to petitioners' position, since VSC's owners after Carter left could have fraudulently overstated Carter's compensation to reduce VSC's taxable income and since Carter's testimony is certainly some evidence in support of his position. However, *625 balanced against the documentary evidence in the record, including the fact petitioners reported this income and claimed credit for the accompanying withholding on their 1974 return, we cannot say petitioners have carried their burden of proof by a preponderance of the evidence. See Estate of Falese v. Commissioner,58 T.C. 895, 898 (1972). We therefore hold Carter's income from VSC was not overstated on his return. To reflect the foregoing, Decision will be entered for respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue.↩
2. Thus, the two new notes totaled $ 19,846.08, which exactly equaled the amount of the notes Carter had canceled. ↩
3. This characterization would avoid possible dividend treatment to Olson and Vance. The "reissuance" also avoided disclosing any change of position on line 18, Schedule L, of VSC's 1974 Federal income tax return, "Loans from Stockholders."↩
4. The three notes in fact totaled $ 19,846. The $ 1,000 discrepancy is not explained by the record.↩
5. This last adjustment has exactly the same effect as treating petitioner as having disposed of the two notes plus the stock for a total price of $ 44,000. We might have carried this analysis one step further and treated petitioner as having disposed of three notes plus his stock for a total of $ 50,000, which is in fact what occurred; but in their petition petitioners conceded the $ 6,000 adjustment for directors fees received in 1974.↩