REALTY OPERATORS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 92387.  Promulgated December 7, 1939.

*Charles M. Trammell, Esq.*, for the petitioner.
*C. H. Curl, Esq.*, for the respondent.

OPINION.

SMITH: This proceeding is for the redetermination of a deficiency in income and excess profits tax for the fiscal year ended February 29, 1936, of $35,934.83 and $809.16, respectively. The petition alleges that the respondent erred in the determination of the deficiency by failing to allow the deduction as an ordinary loss of $400,621.40 on the abandonment of the Maritime Building in New Orleans, Louisiana.

The facts have all been stipulated.

The petitioner is a Louisiana corporation, with offices in New Orleans. It was organized by the Canal Bank & Trust Co. of New Orleans on April 4, 1930. The next day the trust company transferred to the petitioner $3,000,000 cash in exchange for petitioner's total authorized capital stock of 120,000 shares at $25 par value, which $3,000,000 was on the same date deposited by the petitioner with the trust company.

On April 5, 1930, the petitioner purchased from the trust company the Maritime Building in New Orleans, together with other property, at a total price of $6,986,833.89, of which $3,000,000 was paid in cash by checks and a note for $3,986,833.89 secured by vendor's lien was given for the balance.

The cost of the Maritime Building and land to the petitioner was as follows:

| | |
|---|---:|
| Land | $400,000.00 |
| Building | 1,507,530.35 |
| Total | 1,907,530.35 |

There was a mortgage outstanding on the Maritime Building in the amount of $1,375,000, which mortgage was not assumed by the petitioner. The cost of petitioner's equity in the property was therefore $532,530.35.

A reasonable rate for the allowance of depreciation upon the building is 3 percent per annum.

On November 17, 1933, the petitioner entered into a written agreement with the mortgagee, the New York Life Insurance Co., by which it gave to the insurance company physical possession of the property after that date and the right to receive all rents from the building subsequent to June 30, 1933. The agreement further provided:

If at any time before the institution of a foreclosure action as herein provided, the loan secured by the said bond, notes and mortgage is placed in good financial standing in every way, then the party of the second part [the insurance company] will immediately cancel this agreement.

The New York Life Insurance Co. has operated the Maritime Building continuously from November 17, 1933, to date, collecting all rents and paying all obligations thereon.

On February 14, 1936, the New York Life Insurance Co. instituted foreclosure proceedings against the Maritime Building in the United States District Court at New Orleans, and petitioner was duly made a party thereto.

On February 21, 1936, a meeting of the board of directors of the petitioner was held and a resolution was passed by which:

E. N. Kearny, President of this Company be and he is hereby instructed to notify New York Life Insurance Company, Canal Bank and Trust Company in Liquidation and Reconstruction Finance Corporation, that this company forthwith gives them, as their interests may appear, peaceful possession of the property covered by the mortgage and that this company abandons any and all rights, title and interests which it has or might have in and to the said property.

The resolution further provided:

That E. N. Kearny, President of this company is authorized for, on behalf of and in the name of this company to sign, execute and record any and all acts, deeds and papers which, in his judgment, may be necessary and proper in order to carry out this resolution.

By letter dated February 21, 1936, the petitioner notified the New York Life Insurance Co. of the foregoing resolution and enclosed in said letter a certified copy of the resolution.

The foreclosure proceeding was brought to a successful conclusion and the property covered by the mortgage was sold March 11, 1937, pursuant to court order by the special master appointed by the said court and the sale was thereafter duly confirmed by the court.

On April 27, 1937, the court entered an order directing the petitioner to sign the master's deed to the property "for the purpose of placing of record that it has no right, title and interest therein." On the same day the petitioner signed the master's deed for the purpose above indicated.

Under the laws of the State of Louisiana a mortgagor has no period of redemption after foreclosure.

The loss sustained by the petitioner upon its investment in the Maritime Building was not covered by insurance or otherwise.

On or before May 15, 1936, the petitioner filed its income and excess profits tax return with the collector of internal revenue at New Orleans, Louisiana, showing a net loss of $50,574.75 for the fiscal year ended February 29, 1936. In computing such net loss the petitioner took a deduction from gross income on account of loss of its equity in the Maritime Building in the amount of $400,621.40.

Upon an audit of the petitioner's income tax return for the fiscal year ended February 29, 1936, the respondent disallowed the deduction

of the claimed loss in the amount of $400,621.40 and in lieu thereof allowed the deduction from gross income of $45,225.91 depreciation upon the Maritime Building. The depreciation was 3 percent of the admitted cost to the petitioner, viz, $1,507,530.35. The respondent determined that the correct net income of the petitioner for the fiscal year was $261,344.21 and that there was an excess profits tax due from the petitioner in the amount of $809.16.

The parties have further stipulated:

27. A deduction of $133,034.81 was claimed by the petitioner as an ordinary loss for loss of equity in the Maritime Building on its Federal income tax return, Form 1120, filed for the fiscal year ended February 28, 1938, at the suggestion of the Revenue Agent and on advice of Counsel that it was necessary to do so to protect its rights in the event the loss should be finally disallowed for the year ending 2/29/36. Petitioner contends and has at all times contended the loss is allowable in year ending 2/29/36 as an ordinary loss. In the final notice of deficiency dated December 15, 1938, the loss was allowed but the deduction was limited to $2000, it being held to be a capital loss subject to the limitation contained in Section 117 (d) of the Revenue Act of 1936, since the Maritime Building was sold in foreclosure proceedings pursuant to court order during the fiscal year ended February 28, 1938.

Three questions are presented for the determination of the Board in this proceeding as follows:

(a) Is the petitioner entitled to a deduction on account of its loss of equity in the Maritime Building in the fiscal year ended February 29, 1936?

(b) Is the loss, if any, a loss on the sale or exchange of a capital asset subject to the limitation on losses under section 117 of the Revenue Act of 1936, or an ordinary loss deductible in full under section 23 of the same act?

(c) What is the period over which petitioner is to compute depreciation on the Maritime Building?

1. In his deficiency notice the respondent gives as the reason for disallowing the claimed loss upon the petitioner's investment in the Maritime Building the following:

It is held that no loss could be sustained until title had definitely passed in accordance with article 23 (e)-3, Regulations 86. See cases of A. J. Schwarzler, United States Board of Tax Appeals, volume 3, page 535 and Frederick Krauss, United States Board of Tax Appeals, volume 30, page 62.

In *Greenleaf Textile Corporation*, 26 B. T. A. 737, the Board stated that it had early adopted the rule that a taxpayer could not sustain a deductible loss as to the value of real estate while retaining title thereto upon the theory that, as stated in *A. J. Schwarzler Co.*, 3 B. T. A. 535, losses "growing out of the ownership thereof, are deductible only when ascertained and determined upon an actual, completed, and closed transaction during the taxable year, and are not sustained through the mental processes by which a taxpayer determines that the property

is worthless and charges it off on its books, while it still retains the title to the property itself."

We think it clear that the petitioner's case falls outside of this rule. Here, the loss is not made to depend upon the "mental processes" of the taxpayer in determining that the property is worthless. The taxpayer actually renounced its title and notified the mortgagee of the renunciation.

The execution of a deed to property is not necessary to sustain the loss arising out of the sale or abandonment of property. In *Rhodes* v. *Commissioner* (C. C. A., 6th Cir.), 100 Fed. (2d) 966, the facts were that the taxpayer had purchased Florida real estate for speculation purposes. Due to the collapse of the Florida land boom and to successive hurricanes, the value of the land suffered complete collapse. The taxpayer claimed a loss during the year 1927, which was disallowed by the Commissioner and affirmed by the Board because there was no identifiable event to sustain the loss. As to one property the petitioner had sought its sale unsuccessfully in 1927 and in 1928 disposed of it for one-twentieth of its cost. The second property was sold by the state in 1927 for unpaid delinquent taxes. There being no bidders, the state acquired the property. Under the statute the owner or others interested therein had two years within which to redeem the property and unless redeemed the title to the property vested in the state. Although the taxpayer charged the loss off on its books and deducted the sum from gross income for 1927, the respondent disallowed it on the ground that the petitioner still retained title to the property. In its opinion the court stated:

> The Board rested its decision largely on its rule that a loss on real estate is not deductible so long as the taxpayer retains title in fee.
>
> The unsoundness of this principle is readily apparent when subjected to the searchlight of reason. The ownership of real estate may become a burden with recurring taxes and the impossibility of finding a purchaser at any price. * * *
>
> *    *    *    *    *    *    *
>
> Standing alone, a tax sale of property is not an identifiable event showing its worthlessness to the owner the year of the sale, but if the taxpayer is financially able to pay the taxes and refuses to do so, the tax sale is of weight along with other evidence as to the time the loss became fixed. The loss statute makes no distinction between real and personal property and there may be an abandonment of real estate in a very practical sense without the taxpayer divesting himself of legal title. *Denman* v. *Brumback*, 58 F. (2d) 128 (6 C. C. A.).

In *Denman* v. *Brumback*, 58 Fed. (2d) 128, the court said:

> The loss claimed was deducted by Brumback under section 214 (a) of the Revenue Act of 1921 (42 Stat. 239). It was disallowed by the Commissioner in reliance upon the case of *Appeal of A. J. Schwarzler*, 3 B. T. A. 535, and upon article 141, of Regulations 62, of the Bureau of Internal Revenue, which provides inter alia that losses incurred in any transaction entered into for profit must usually be evidenced by a closed and completed transaction. The *Schwarz-*

*ler* Case seems to hold, and it is contended by the appellant that it does hold, that losses suffered in the purchase of real estate cannot be determined until the property is sold, and that there can be no closed transaction with respect to real estate short of its sale, voluntary or enforced. We think no such inflexible rule is to be found either in the statute or the regulation. The general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal, test. *Lucas* v. *American Code Company*, 280 U. S. 445, 50 S. Ct. 202, 74 L. Ed. 538. Having in mind the practical test, we think the case falls within *United States* v. *White Dental Company*, 274 U. S. 398, 47 S. Ct. 598, 600, 71 L. Ed. 1120. * * *

In *W. W. Hoffman*, 40 B. T. A. 459, the Board held that where the interest of the taxpayers in improved real estate owned by them, subject to a mortgage, became worthless in 1934 the taxpayers were entitled to deduct their loss in that year under section 23 (e) (2) of the Revenue Act of 1934, although title remained in them until foreclosure was completed in the following year, despite their efforts to abandon their interest in the property during 1934.

We can not doubt from the resolution of the board of directors of the petitioner corporation on February 21, 1936, that it intended to and did equitably transfer to the mortgagee all of its right, title, and interest in and to the Maritime Building. Thereafter, it had no equity in the building. The naked legal title gave it no equitable interest. We conclude that the petitioner's loss was sustained within the taxable year ended February 29, 1936.

2. The respondent contends that in any event the allowable loss is limited to $2,000 by section 117 (d) of the Revenue Act of 1936, which provides in material part that "Losses from sales or exchanges of capital assets shall be allowed only to the extent of $2,000 plus the gains from such sales or exchanges." We think it manifest from the stipulated facts in this case that there was no "sale or exchange" by the petitioner of the Maritime Building. It was not the obligor upon the mortgage held by the New York Life Insurance Co. It simply had an equity in that property. That value was obliterated when it abandoned all of its claims to the property. See *Commonwealth, Inc.*, 36 B. T. A. 850; *Sol Greisler*, 37 B. T. A. 542; *Commissioner* v. *Freihofer*, 102 Fed. (2d) 787. In the *Freihofer* case the Circuit Court of Appeals for the Third Circuit said:

We think it compels the conclusion that the sales of capital assets referred to in Section 117 are those sales only which are voluntarily made by a taxpayer and that judicial sales made by the sheriff in execution of a judgment in a proceeding for the foreclosure of a mortgage given by a prior owner are not included.

But, in the present case there was clearly no sale by the petitioner; neither was there any exchange. The facts in the case clearly take the proceeding out of the ambit of section 117 (d) of the Revenue Act of 1936. The loss is allowable to the full extent of the amount sustained.

3. The petitioner acquired title to the Maritime Building on April 5, 1930. Its investment in the building was $1,507,530.35. The parties have stipulated that the depreciation rate is 3 percent per annum. The depreciation period extended to the time when the petitioner surrendered all right, title, and interest in and to the property, viz., February 21, 1936.

*Decision will be entered under Rule 50.*