FRANK L. LAPORT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Laport v. Commissioner
Docket No. 11520-78.
United States Tax Court
T.C. Memo 1980-355; 1980 Tax Ct. Memo LEXIS 230; 40 T.C.M. (CCH) 1134; T.C.M. (RIA) 80355; September 3, 1980, Filed *230 Petitioner borrowed money from Surfside on a shortward nonrecourse note. He then applied the proceeds toward the purchase of unimproved real estate from a third party. Fifteen days later, when it proved to be impossible for petitioner to repay the note by its due date, he voluntarily conveyed the real estate to Surfside by quit-claim deed. By so doing petitioner sustained a $150,841 loss. Held: petitioner's loss was a capital loss, subject to the limitations provided in sections 1211 and 1212, I.R.C. 1954. Freeland v. Commissioner, 74 T.C.     (No. 70) (August 5, 1980) followed. David Davidson, for the petitioner. Anita N. Gottlieb, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the year 1973 in the amount of $73,039. The issue for decision is whether a $150,841 loss which petitioner sustained in a real estate transaction was an ordinary or capital loss. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation and the attached exhibits are incorporated herein by reference. At the time the petition in this case was filed, petitioner resided in South Holland, Illinois. *232 Petitioner is an attorney whose major area of practice is negligence law. In August of 1973, petitioner became aware that two large parcels of vacant land located in Marion County, Florida (hereinafter referred to as the "property"), were available for sale. On October 21, 1973, petitioners paid Recreational Systems, Inc., $50,000 for the assignment of a purchase contract for the property. Recreational Systems, Inc. had acquired the purchase contract from ELM Investments, the original buyer named in the contract. The sellers of the property were John J. and Barbel Curran. The purchase price, as stated in the contract, was $1,647,832. Pursuant to the contract, petitioner agreed to assume, as part of the purchase price, first and second mortgages on the property totaling approximately $1,038,374. Neither of these two mortgages restricted the personal liability of the mortgagors (John and Barbel Curran, the sellers); i.e., the mortgages were not nonrecourse. The purchase price was to be satisfied by way of the following: a $197,458 purchase money note and mortgage to the seller; a $50,000 deposit payable to Fred Mancinik in escrow; [1] and $362,000 in cash or a cashier's check *233 in that amount. Petitioner spent a total cash outlay of $150,841 to acquire the property; $50,000 of that amount was attributable to the money paid to Recreational Systems, Inc., for the assignment of the contract. [2] In order to meet the balance due under the purchase contract, petitioner borrowed $195,064.59 from Surfside Development Limited, a Bahamian corporation ("Surfside") and executed a mortgage deed on the property to Surfside as mortgagee. This mortgage provided that "the Mortgagor [sic] agrees to look soley [sic] to security of the land for its security and payment and the Mortgagor shall not be personally liable." The promissory note secured by the mortgage also provided that "the obligation evidenced by this note shall not constitute a personal liability of the maker,… and the payee agrees *234 to look to the land secured by the mortgage as its sole security for the payment." The mortgage deed was dated December 7, 1973; the due date of the loan from Surfside was December 22, 1973. The property was conveyed from John J. and Barbel Curran to petitioner by way of a warranty deed dated November 27, 1973. The deed recited that the conveyance was subject to the first and second mortgages on the property "which the Grantee herein agrees to assume and pay according to their terms and tenors." This deed was filed and recorded on December 7, 1973. [3]
Because of the short-term nature of petitioner's obligation to Surfside, it was necessary for him to obtain additional financing for the property. However, his efforts in this direction were unsuccessful. Consequently, on December 22, 1973, petitioner executed a quit-claim deed for the property to Surfside, receiving no cash or other property in return. The deed was subsequently filed with the *235 office of the Clerk of the Circuit Court, Marion County, Florida, on January 21, 1974. Petitioner never made any payments on the property's first and second mortgages. During 1974, payments on these mortgages were made by Surfside. Between February and September, 1974, petitioner, acting as a broker for Surfside, attempted to find a buyer for the Florida property. Had petitioner been successful in these attempts he would have earned a 10 percent commission. On October 21, 1974, petitioner and Surfside organized a limited partnership known as Royal Pines Limited ("Royal Pines"). Petitioner was the general partner and Surfside was the limited partner. Petitioner made an initial capital contribution of $7,000 while Surfside contributed $1,000 and the property. In 1975 and subsequent years, the payments on the property's first and second mortgages were made by Royal Pines. Petitioner continued in his efforts to sell the property after the formation of Royal Pines, but as of the trial date such efforts were unsuccessful. The partnership agreement provided that petitioner would have received a percentage of the net sales proceeds had the property been sold. On his 1973 *236 income tax return, petitioner claimed an ordinary loss for "abandonment of vacant acreage", in the amount of $150,841. In his notice of deficiency, respondent treated the loss as a capital loss and limited the amount of the deduction against 1973 ordinary income to $1,000.
OPINION Petitioner contends that he abandoned the Florida property upon execution of the quit-calim deed in December or 1973 and that he is consequently entitled to an ordinary loss. Respondent argues that the petitioner's loss is capital and has raised several objections to petitioner's claim that the loss's character is ordinary. Respondent asserts that petitioner is not entitled to an abandonment loss because he has failed to prove the property's worthlessness and also because of his subsequent interest in the property through the partnership, Royal Pines. In addition, respondent maintains that a debtor's transfer of collateral to a creditor in cancellation of a nonrecourse liability is, for purposes of sections 165 and 1211, [4] a sale or exchange and (assuming the collateral is a capital asset) any resulting loss is a capital loss; in the respondent's view the nonrecourse nature of the liability does *237 not signify that the conveyance is removed from the ambit of the sale or exchange requirement of section 1211 merely because the mortgagor has failed to receive any consideration. Finally, respondent maintains that petitioner was personally liable on the property's first and second mortgages and was relieved thereof upon the conveyance to Surfside. Accordingly, the relief of these liabilities, apart from the nonrecourse liability, constitutes consideration for purposes of determining whether a sale or exchange occurred and thus the loss is in any event a capital loss. It is evident that petitioner's loss here is capital. Even if it were to be assumed that petitioner abandoned the property, the conveyance to Surfside nonetheless constitutes a sale or exchange for purposes of applying the capital loss limitations of section 1211. [5]
As an initial matter, petitioner's claim that he is entitled to an abandonment loss *238 is dubious at best. One of the requisite elements of an abandonment loss is proof that the property was totally worthless as opposed to having merely decreased in value. Commissioner v. McCarthy,129 F.2d 84 (7th Cir. 1942), revg. and remanding 44 B.T.A. 417 (1941). Where the property is mortgaged, worthlessness of the taxpayer's equity must be proved Commissioner v. Abramson,124 F.2d 416 (2d Cir. 1942). Petitioner has failed in this regard. The evidence concerning petitioner's equity in the property and the worthlessness thereof is simply lacking in this record. Furthermore, petitioner's dealings with the property subsequent to the execution of the quit-claim deed call into question whether, in actuality, he "disposed" of his interest in the property. The abandonment issue aside, petitioner's loss is nonetheless capital in nature. Petitioner maintains that the conveyance to Surfside was not a sale or exchange as he received no consideration. In other words, the transaction was merely a disposition and not a sale. See Parker v. Delaney,186 F.2d 455, 459 (1st Cir. 1950). Petitioner has directed our attention *239 to Stokes v. Commissioner,124 F.2d 335 (3d Cir. 1941); Polin v. Commissioner,114 F.2d 174 (3d Cir. 1940); Commissioner v. Hoffman,117 F.2d 987 (2d Cir. 1941); and Realty Operators, Inc. v. Commissioner,40 B.T.A. 1051 (1939) to support this position. This Court has recently held that the transfer by a mortgagor to the mortgagee of the mortgaged property constitutes a sale or exchange even if the transfer is undertaken solely for the satisfaction of a nonrecourse liability. Freeland v. Commissioner, 74 T.C.     (August 5, 1980). That decision overruled three old cases, Jamison v. Commissioner,8 T.C. 173 (1947); Lapsley v. Commissioner,44 B.T.A. 1105 (1941); and Baird v. Commissioner,42 B.T.A. 970 (1940), supp., 43 B.T.A. 415 (1941), all of which were decided before the Supreme Court's decision in Crane v. Commissioner,331 U.S. 1 (1947). The opinion in Freeland noted that the rationale of Crane supplies the necessary consideration. Freeland v. Commissioner, at     (p. 18, slip opinion). The only distinction *240 between Freeland and the instant case is that the mortgagee in Freeland was also the seller of the property. This clearly does not warrant a different result. Assuming there is some question as to whether petitioner was relieved of a personal liability upon the conveyance of the property to Surfside, we need not answer that question since the result here would be the same: [6] under the authority of Freeland,supra, petitioner's transfer of the property to Surfside constituted a sale for purposes of the capital loss limitations contained in section 1211. *241 As a final matter we note that the parties have stipulated that the amount of the petitioner's loss was $150,841. That loss would normally be determined under section 1001(a) as the excess of petitioner's adjusted basis in the property (presumably the $1,647,832 purchase price) over the amount realized upon the transfer to Surfside. The amount realized under Crane would be the total liabilities extinguished, an amount which would be difficult to ascertain from this record. [7] However, since the parties have stipulated the amount of the loss, we need not delve any further into this area. For the foregoing reasons, we hold that the loss which petitioner sustained upon transferring the property to Surfside was a capital loss subject to the limitations provided in sections 1211 and 1212. Freeland v. Commissioner, *242 supra. Accordingly, Decision will be entered for the Respondent. Footnotes
1. The assignment from Recreational Systems, Inc., to Frank Laport stated that all the rights under the original sale and purchase contract (between John and Barbel Curran and ELM Investments) were being assigned "including the $50,000 deposit and payments made thereunder." Thus it appears that petitioner was credited with the $50,000 deposit paid by ELM Investments.↩
2. See the preceding note.↩
3. The discrepancy between the dates of the warranty deed-- November 27, 1973--and the mortgage deed--December 7, 1973--is attributable to the fact that closing did not occur until the latter date.↩
4. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, except as otherwise expressly indicated.↩
5. The parties agree that the property was a capital asset in petitioner's hands. Section 1221.↩
6. Respondent has cited several Florida cases for the proposition that where the grantee accepts a deed containing a clause which provides for the assumption of the mortgage debt, the grantee becomes personally liable to pay the mortgage; the mortgagee may treat the grantee as the principal debtor. Brownson v. Hannah,93 Fla. 223, 111 So. 731 (1927); and Alabama-Florida Co. v. Mays,111 Fla. 100, 149 So. 61 (1933). As there remains no question that consideration is received when the mortgagor transfers the mortgaged property to the mortgagee in settlement of a personal liability, any resulting loss is capital (assuming the property is a capital asset). See e.g., Stamler v. Commissioner,145 F.2d 37 (3d Cir. 1944); Richter v. Commissioner,124 F.2d 412↩ (2d Cir. 1942).
7. The first and second mortgages on the property ($1,038,374) and the Surfside mortgage ($197,458) totaled $1,235,832. No evidence was presented concerning whether petitioner gave a purchase money note and mortgage to the seller. The excess of petitioner's adjusted basis over these three mortgages is $412,000, an amount greater than the stipulated loss.↩