**HELVERING, Com'r of Internal Revenue,
v. HINDES et al. (two cases).
Nos. 3697, 3698.**

Circuit Court of Appeals, Fourth Circuit.

Jan. 8, 1935.

A. F. Prescott, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., Sewall Key and Lucius A. Buck, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

Vernon Cook, of Baltimore, Md., for respondents.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is a petition to review decisions of the United States Board of Tax Appeals involving deficiencies determined against each of the respondent taxpayers for the calendar year 1927, and also involving a deficiency in case No. 3698, for the year 1928. The deficiencies determined against the several taxpayers amount to a total of $85,366.51. The opinion of the Board of Tax Appeals is reported in 29 B. T. A. 498.

The facts were stipulated and as found by the Board are as follows:

Isaac E. Emerson, late of Baltimore, president and principal stockholder of the Emer-

son Drug Company, was a man of wealth and long enjoyed a large income. For many years prior to his death he had contributed more or less regularly to the support of a number of his relatives. There came a time when he decided to make definite provisions for such allowances and to that end, during the period 1919 to 1921, he created fourteen irrevocable trusts, each for the benefit of certain of his relatives. As trust property he transferred to the trustee shares of common stock of the Emerson Drug Company in such amounts for each trust as he deemed desirable and suitable. Of one trust, Anna E. Pope was trustee; of all the other trusts the trustee was Emerson's close associate, Hindes, the respondent. Generally the declarations provided for the periodical distribution of the trust income to the designated beneficiaries for life, and upon their deaths, to their children for a period of ten years, at the end of which the corpus was to be distributed to those children or their issue; if there were no such issue, the corpus was to revert to the grantor or his estate. The terms of some of the indentures differed somewhat from that general outline, but not in a manner here material. It is conceded that the creation of these trusts was entirely gratuitous on Emerson's part; that, without any bargaining with the beneficiaries, and without discharging any legally recognizable obligation to them, he made these gifts.

Thereafter, Emerson became dissatisfied with what he had done, chiefly perhaps because he found he had given away so much common stock that he no longer held a two-thirds majority in the Emerson Drug Company, but also because the cash and stock dividends upon the common stock had resulted in a greater income to some of the beneficiaries than he had intended; moreover, he was convinced that preferred stock was more suitable as corpus of the trusts than common. In 1927 he undertook to rearrange the entire matter of allowances to his relatives and, as a beginning, wrote to each of the life-tenant beneficiaries this letter: "I have recently been going over certain of my business affairs and think it advisable to make some changes in the allowances which I have heretofore been giving you and others of my relatives. As this matter is covered by a trust agreement under which Mr. Joseph F. Hindes is trustee, it is necessary that you should sign the enclosed authorization addressed to him. Please attend to this as promptly as possible and I will let you

know just what allowance I shall make you in the future under the new trusteeship."

The authorization mentioned is as follows: "You are trustee under a declaration of trust heretofore made by Captain Isaac E. Emerson in my favor. The making of this trust was entirely voluntary on Captain Emerson's part and was intended to be an allowance from him to me toward my support. He has recently written me to the effect that he wishes to make some changes in the schedule of allowances which he has made from time to time for various relatives, and I am writing this line to say that I am entirely satisfied that he and you as trustees should make any change whatsoever that he may see fit in regard to the trust in my favor."

In the case here before us, all the life-tenant beneficiaries (but not the remaindermen, for they were not so requested) executed and delivered that authorization, whereupon Hindes and Mrs. Pope, in December, 1927, assigned and delivered to Emerson the common stock which they held as trustees under the several declarations of trust.

At, or about, that same time Emerson executed a second set of trust indentures, each naming Hindes as trustee and assigning shares of preferred stock of the Emerson Drug Company as corpus of the trusts. In 1928 Emerson transferred additional preferred stock, increasing the corpus of one or more of the trusts. In five of the new trusts there were substantial changes, both as to beneficiaries and terms, from the old trusts which they supplanted; in two of the new trusts the life beneficiaries were the same but different remaindermen were designated; while in seven of the new trusts the beneficial interest and terms were essentially the same as in the corresponding old trusts. In connection with the creation of the new trusts there was no agreement between Emerson, Hindes, or any of the beneficiaries other than evidenced by the letters above set out, and the determination of the amount of the corpus and the terms of the trusts were made by Emerson alone, without consultation with the trustee or the beneficiaries. By one of the new trusts both the value of the corpus and the annual income to the beneficiary were reduced; by the others the value of cash corpus was substantially increased, although the income therefrom remained about the same as before.

On appeal to the Board of Tax Appeals, from the determination of deficiencies by the Commissioner of Internal Revenue, the Board reversed the Commissioner, and this petition to review the action of the Board was filed pursuant to the provisions of the Revenue Act of 1926, § 1001 (a), as amended by the Revenue Act of 1932, § 1101 (a), 26 USCA § 1224 (a).

The question presented is whether the transactions, set out in detail in the findings of fact, constituted a taxable exchange within the meaning of sections 202 (d) and 203 (a) of the Revenue Act of 1926, 26 USCA §§ 933 (d), 934 (a), and sections 111 (d) and 112 (a) of the Revenue Act of 1928, 26 US CA §§ 2111 (d), 2112 (a). The applicable acts are as follows:

Revenue Act 1926, c. 27, 44 Stat. 9, §§ 202 (d), 203 (a), 213 (b) (3), 26 USCA §§ 933 (d), 934 (a), 954 (b) (3):

"Sec. 202. * * * (d) In the case of a sale or exchange, the extent to which the gain or loss determined under this section shall be recognized for the purposes of this chapter shall be determined under the provisions of section 203 [section 934]. * * *

"Sec. 203. (a) Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 202 [section 933 of this title], shall be recognized, except as hereinafter provided in this section. * * *

"Sec. 213. * * *

"(b) The term 'gross income' does not include the following items, which shall be exempt from taxation under this title: * * *

"(3) The value of property acquired by gift, bequest, devise, or inheritance (but the income from such property shall be included in gross income)."

Article 1572, Treasury Regulations 69, provides:

"Art. 1572. Exchanges of property.—In the following cases no gain or loss is recognized:

"(a) If property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stock, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment. The words 'like kind' have reference to the nature or character of the property and not its grade or quality. Therefore, under this paragraph no gain or loss is realized by one other than

a dealer from the exchange of real estate for other real estate. * * * "

It is well settled, and we know of no authorities to the contrary, that, in matters of taxation, the substance rather than the form of the transaction will be regarded. United States v. Phellis, 257 U. S. 156, 42 S. Ct. 63, 66 L. Ed. 180; Helvering v. Security Savings & Commercial Bank (C. C. A.) 72 F. (2d) 874; Schoenheit et al. v. Lucas (C. C. A.) 44 F.(2d) 476; Labrot et al. v. Burnet, 61 App. D. C. 47, 57 F.(2d) 413; Phelps v. Commissioner (C. C. A.) 54 F.(2d) 289.

Applying this principle we find that the transactions here involved did not constitute taxable exchanges, but that in setting aside the trusts as originally created, receiving back the common stock, and exchanging therefor the preferred stock in the same company, Emerson was merely reshaping or re-molding the trusts as originally created, the better to conform with his ideas. All the transfers involved were, in reality, gifts and therefore not taxable. Just what motivated Emerson is not material, but it is not reasonable to conclude that, in the transactions necessary to make the change, any of the parties became liable to a tax under the Revenue Acts.

In addition to this the properties exchanged were "of a like kind" (Article 1572, Treasury Regulations above quoted).

In a well-considered opinion the member of the Board of Tax Appeals who wrote the decision reaches the same conclusion.

The decisions of the Board are affirmed.