HARRY PAYNE BINGHAM AND MRS. HARRY PAYNE BINGHAM, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 82160. Promulgated October 18, 1938.

*Will R. Gregg,* Esq., *Allin H. Pierce,* Esq., and *Donald M. Harris,* Esq., for the petitioners.

*P. A. Bayer,* Esq., for the respondent.

914

916

OPINION.

VAN FOSSAN: The only issue before us is whether the transaction by which the petitioner reacquired the real estate sold to Copp resulted in a capital loss or an ordinary loss or bad debt, as provided in the applicable portions of sections 23 and 101 of the Revenue Act of 1932.[1]

The facts may be restated briefly as follows:

In 1926 the petitioner sold Florida real estate to Copp for $500,000, of which $50,000 was paid in cash and $450,000 by the execution of four promissory notes, secured by a mortgage on the real estate, due March 15, 1926, 1927, 1928, and 1929, respectively. The petitioner returned the entire profit on the sale in 1926.

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

   \*      \*      \*      \*      \*      \*      \*

(e) LOSSES BY INDIVIDUALS.—Subject to the limitations provided in subsection (r) of this section, in the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

   \*      \*      \*      \*      \*      \*      \*

(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; \* \* \*

SEC. 101. CAPITAL NET GAINS AND LOSSES.

   \*      \*      \*      \*      \*      \*      \*      \*

(b) TAX IN CASE OF CAPITAL NET LOSS.—In the case of any taxpayer, other than a corporation, who for any taxable year sustains a capital net loss (as hereinafter defined in this section), there shall be levied, collected, and paid, in lieu of all other taxes imposed by this title, a tax determined as follows: a partial tax shall first be computed upon the basis of the ordinary net income at the rates and in the manner as if this section had not

Copp paid the first note, a part of the principal on the remaining notes, and the interest on all notes up to March 15, 1931. After September 15, 1931, he was unable and failed to make further payments on either the principal or the interest. From that date until February 13, 1932, the petitioner attempted to collect the notes or to persuade Copp to reconvey the real estate to him. He was unsuccessful in both endeavors. On that day he instituted a foreclosure proceeding. Later, a settlement was effected with Copp under which Copp reconveyed the property at an appraised value of $242,500 and Bingham executed a satisfaction of the mortgage and canceled and surrendered the unpaid notes to Copp.

There is no question that the notes are capital assets of the petitioner. A loss is conceded to have been sustained. Only the character of the loss is at issue.

Under substantially similar facts we held in *Betty Rogers*, 37 B. T. A. 897, that the conveyance of the property by the debtors in consideration of the cancellation of their debt was a sale within the meaning of that word, as used in section 101 (c) (2) of the Revenue Act of 1932, and that the loss there sustained was a capital loss.

The facts in that case were, briefly, as follows:

During September 1927 Will Rogers and his wife Betty purchased real estate for profit at a price of $105,000, payable as follows: $15,000 in cash, the assumption of a $52,000 mortgage note, and the execution by the purchasers of their note for $38,000, secured by a deed of trust on the property. The petitioners paid the $15,000 cash and the $52,000 note. Their note for $38,000 due August 25, 1932, was assigned to the California Trust Co. On August 29, 1932, payment was demanded and a proceeding to enforce collection under the trust deed was threatened if the payment were not made. Thereafter the purchasers agreed to convey the property to the holder of the note and the latter agreed to surrender and cancel the note and did so.

After discussing the meaning of the words "sell" and "exchange", we said:

---

been enacted, and the total tax shall be this amount minus 12½ per centum of the capital net loss; but in no case shall the tax of a taxpayer who has sustained a capital net loss be less than the tax computed without regard to the provisions of this section.

(c) DEFINITIONS.—For the purposes of this title—

\*     \*     .     \*     \*     \*     \*     \*

(2) "Capital loss" means deductible loss resulting from the sale or exchange of capital assets.

\*     \*     \*     \*     \*     \*     \*

(6) "Capital net loss" means the excess of the sum of the capital losses plus the capital deductions over the total amount of capital gain.

\*     \*     \*     \*     \*     \*     \*

(8) "Capital assets" means property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business. \*   \*   \*

* * * By reason of the transfer of the property to their creditor petitioners were released from their promise to pay $38,000, and their creditor relinquished its right to collect this amount. In our opinion the transaction should be treated either as a sale of petitioners' right, title, and interest in the property for the price of their obligation or as an exchange of real estate for the obligation, both properties having an equal value. We prefer to regard the transaction as a sale. This view is supported by a decision of the Supreme Judicial Court of Massachusetts in *Gallus* v. *Elmer*, 193 Mass. 106; 78 N. E. 772. * * *

In distinguishing the case of *Hale* v. *Helvering*, 85 Fed. (2d) 819, we said:

While we agree with the court that under the facts of the *Hale* case the *compromise* of a note was not a "sale" or an "exchange", because the property in the notes was *extinguished*, and not sold, we do not believe that this case is controlling of the instant proceedings. Petitioners disposed of real property. They are claiming the right to a loss deduction for the reason that the amount realized was less than the cost of the property to them. No compromise of a note is involved. Petitioners gave up all of their right, title and interest in the real property for the equivalent of $38,000, and thereby reduced the amount of the loss resulting from their investment in the property by that amount. If petitioners had transferred the property for $38,000 in cash and then had used the cash to satisfy their indebtedness, it is clear that they would have made a sale of their property. We do not believe that the situation is changed where the property is transferred directly to the creditor in satisfaction of the indebtedness. Cf. *United States* v. *Hendler*, 303 U. S. 564; *E. F. Simms*, 28 B. T. A. 988, 1030 * * *.

In the *Hale* case the court specifically pointed out that "there was no acquisition of property by the debtor, no transfers of property to him." In the instant case such a transfer of property occurred.

The case at bar differs in its facts from the *Rogers* case in that there the note of the debtors was assigned, while here it was retained by the vendor of the real estate, and there the ability of Rogers to pay the note was unquestioned, while here Copp was unable to pay his obligations. These differences, we think, create no basis of distinction between the cases. The assignee of the note acquired the rights by the deed of trust granted to the vendor of the property and thus is on a parity with it with relation to the purchasers. The petitioner and the vendor occupy the same relative positions with respect to Copp and Rogers.

Nor does the difference in the financial positions of Rogers and Copp render the basic principle in the *Rogers* case essentially inapplicable to the case at bar. Assuming that Copp was wholly unable to pay all or any part of the interest or principal of his notes to the petitioner, yet the relinquishment of the payee's right to collect those notes from the maker and the release of any right he might have to a deficiency judgment against the debtor in case the foreclosure sale produced a deficiency, were without question a valuable consideration. Applying the principles set forth in the *Rogers* case, the conveyance

of the real estate, worth $242,500, by Copp to Bingham, carrying with it all of the former's right, title, and interest therein, was made in consideration of the price of Copp's obligations, coupled with the right to enforce against him the collection of those debts or of any potential deficiency judgment after foreclosure. Hence, the transaction constituted a sale or exchange of property and property rights within the meaning of the statutory definition of a capital asset and the loss, $65,668.36, is a capital loss.

We are not unmindful of the fact that in the *Rogers* case the petitioners claiming the loss were the purchasers, while in the case at bar they are the sellers. The rule is applicable equally to both. When the transaction is found to be a sale or exchange, all those connected with it must be governed by the character so established. Since the reconveyance by the vendee of the property sold by the seller, or his successor in interest, under the circumstances of the *Rogers* case constituted a sale or exchange resulting in a capital loss to the vendee, under similar circumstances, such as those surrounding the case before us, the sale or exchange thus made creates a capital loss for the vendor.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

Smith, dissenting: The majority opinion holds that where property is sold and purchase money notes secured by a mortgage on the property are taken in partial payment and the vendee, being unable to pay the notes, surrenders or reconveys the property to the vendor and is released from his obligation on the notes, the loss to the vendor is a capital loss "resulting from the sale or exchange of capital assets", within the meaning of section 101 of the Revenue Act of 1932. Consequently, it is held, the unpaid portion of the indebtedness may not be deducted either as an ordinary loss or as a bad debt although wholly uncollectible at the time of the transaction.

I do not think that section 101 was ever intended to apply to a situation of this sort. The only sale or exchange that took place here was the original transfer of the property to the vendee in 1926. The taxpayer, vendor, has paid the tax on his gain from that sale. The unpaid portion of the sale price, which was included in the taxable gain, then became a debt owed to the taxpayer by the vendee. If the taxpayer had ascertained that the debt was worthless in whole or in part during the taxable year and had charged off the worthless portion, such portion, without question, would be deductible by him as a bad debt. *Harold S. Denniston*, 37 B. T. A. 834. The evidence is that the taxpayer did ascertain that the debt was worthless over and above

the fair market value of the mortgage notes and the collateral security. By way of settling the debt the taxpayer, under an agreement with the debtor, took over title to the property under his mortgage in full satisfaction of the debt and, the debtor being unable to make further payment, charged off the balance as a bad debt. The view of the majority opinion is that under the Board's ruling in *Betty Rogers*, 37 B. T. A. 897, this constituted a sale or exchange by the petitioner "of Copp's [the debtor's] obligations, coupled with the right to enforce against him the collection of those debts or of any potential deficiency judgment after foreclosure."

Without challenging the soundness of the principle on which the *Betty Rogers* case was decided, as applied to the facts in that case, I think that its application in this case leads to an entirely erroneous result. The theory that there was a "sale" here by the creditor to the debtor of the debtor's own obligation to the creditor becomes entirely unreasonable in the face of the facts that in the so-called sale the petitioner received nothing more from the debtor than he was already legally entitled to receive under his mortgage, and the debtor was unable to pay anything more. There was no new consideration passing from the debtor to the petitioner except the debtor's consent to convey the property back to the petitioner voluntarily without the formality of a foreclosure suit. This is a common form of procedure in such circumstances. The seller merely agrees to take back his property because of the buyer's inability to pay and is willing to stand his loss on the uncollectible balance of the debt. Such a loss is not one "resulting from the sale or exchange of capital assets" within the intendment of section 101 (c) (2) of the Revenue Act of 1932.