### BINGHAM v. COMMISSIONER OF INTERNAL REVENUE.

### No. 401.

Circuit Court of Appeals, Second Circuit.

July 26, 1939.

Will R. Gregg, Allin H. Pierce, and Donald M. Harris, all of New York City, for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key and Newton K. Fox, Sp. Assts. to Atty. Gen., for respondent.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

In 1926, the petitioner sold and conveyed certain real estate in Florida to one Copp who agreed to pay $500,000 for it. Copp paid the petitioner $50,000 in cash at the time of the purchase and gave him four interest-bearing promissory notes all dated January 15, 1926, to make up the remainder of the purchase price. One of these notes was for $100,000 and was payable March 15, 1926. The remaining three, each for the face amount of $116,666.67, were payable one each year on the same day of March in 1927, 1928 and 1929. All of the notes were secured by a mortgage on the real estate sold by the petitioner. Petitioner reported his profit on the sale in 1926 and paid the tax thereon.

Only the first note was paid in full by Copp. He paid but $43,333.33 in all on the principal of the remaining notes together with a portion of the interest which accrued. The last payment on account of principal was made April 8, 1930. All of this interest was reported as income when received by the petitioner and the taxes on it were paid by him.

Having unsuccessfully tried to collect the amount due him on the notes, the petitioner in 1931 had Copp's financial condition investigated and became convinced that Copp was personally unable to pay the notes in full. He then had the real estate appraised. The appraisal was made on December 29, 1931, and mailed the next day to petitioner's attorneys in New York. It did not come to his attention, however, until after January 1, 1932. He tried to make a settlement with Copp to avoid foreclosure of the mortgage but failed and on February 19, 1932, commenced an action to foreclose the mortgage. This action was dismissed on March 9, 1932, in accordance with the terms of a settlement in which Copp re-conveyed the real estate to the petitioner in return for the cancellation of his debt represented by the unpaid notes and interest. These notes were surrendered to Copp.

The petitioner filed a joint return with his wife of income for 1932 in which he claimed a deduction of $65,668.36 as a bad debt resulting from the settlement with Copp. The amount of the loss, computed by deducting the appraised value of the property from the amount due on the notes plus expenses incident to the re-conveyance, is not disputed. The petition for review puts in issue only whether the deduction was allowable as a capital loss or as a bad debt and whether, if as a bad debt as the petitioner claims, it was a permissible deduction in 1932.

■ The contention of the Commissioner, which was upheld by a majority of the Board, that this admitted loss was allowable only as a capital loss is based on section 101 (c) (2) of the Revenue Act of 1932, 26 U.S.C.A. § 101 note, which defines a capital loss as a "deductible loss resulting from the sale or exchange of capital assets". It is said that Copp's interest in the real estate which he re-conveyed to the petitioner, an admitted capital asset, was sold for the notes which, though cancelled and returned to the maker, were capital assets also. The nub of the controversy is whether or not the notes were in the stated circumstances such assets within the meaning of the statute. In so holding, the majority of the Board distinguished Hale v. Helvering, 66 App.D.C. 242, 85 F.2d 819, on the theory that in that case "* * * the property in the notes was extinguished, and not sold, * * *". But in this instance the notes were also cancelled and transferred to the maker. They were thus extinguished. In the Hale case, the maker was financially able to pay them in full while here he was not, but aside from that immaterial difference the situations seem to be the same. One would not ordinarily speak of the surrender of a note to its maker as the sale of the note to him even though the surrender was for full consideration as when the amount due on it was paid in cash. Neither would such a transaction in the ordinary course of business be looked upon as an exchange of the note for the amount due upon it. The language of a revenue act is to be read in the light of the practical matters with which it deals and is to be given its ordinary significance in arriving at the meaning of the statute. Old Colony R. Co. v. Commissioner, 284 U.S. 552, 52 S.Ct. 211, 76 L.Ed. 484; De Ganay v. Lederer, 250 U.S. 376, 39 S.Ct. 524, 63 L.Ed. 1042. See, also, Lynch v. Alworth-Stephens Co. 267 U.S. 364, 45 S. Ct. 274, 69 L.Ed. 660.

What may have been property in the hands of the holder of the notes simply vanished when the surrender took place and the maker received them. He then had, at most, only his own obligations to pay himself. Any theoretical concept of a sale of the notes to the maker in return for what he gave up to get them back must yield before the hard fact that he received nothing which was property in his hands but had merely succeeded in extinguishing his liabilities by the amounts which were due on the notes. There was, therefore, no sale of the notes to him in the ordinary meaning of the word and no exchange of assets for assets since the notes could not, as assets, survive the transaction. That being so, such a settlement as the one this petitioner made involved neither a sale nor an exchange of capital assets within the meaning of the statute. Hale v. Helvering, supra; United States v. Fairbanks, 9 Cir., 95 F.2d 794; Fairbanks v. United States, 59 S.Ct. 607, 608, 83 L.Ed. 855; Felin v. Kyle, 3 Cir., 102 F.2d 349.

■ It does not follow, as of course, that because the petitioner sustained a loss which he is right in saying was not within the definition of capital loss found in Sec. 101(c) (2) of the 1932 Act that it is deductible as a bad debt under Sec. 23 (j) of the same Act, 26 U.S.C.A. § 23 (k), in the particular year in which he claimed the deduction. It is true that this record shows that the petitioner charged off in 1932 that portion of Copp's debt which exceeded the value of the property, less the expense of the settlement, when he took it back so that his loss so charged off was apparently deductible as a bad debt in 1932 under subdivision (j), supra. See, Arts. 191; 193; and 194 of T. R. 77. There was evidence also upon which the Board might have found that he ascertained in 1932 the portion of the debt properly to be charged off in that year.

■ The petitioner apparently did at all times before 1932 have reasonable cause to believe that he could enforce the partial payment of the notes by resorting to the mortgage securing them. While he had such reasonable expectation of partial payment, he could not charge off the entire debt as worthless nor was he bound to make any charge-off. Blair v. Commissioner, 2 Cir., 91 F.2d 992, 994. He seems to have charged off the uncollected part of the debt in the year he first ascertained that that part was worthless but as the Board has not yet made a finding on that point we leave the matter open for consideration and decision by it if the parties cannot agree as to that fact.

Reversed and remanded.