## POLIN v. COMMISSIONER OF INTERNAL REVENUE.

No. 7268.

Circuit Court of Appeals, Third Circuit.

Aug. 12, 1940.

George E. H. Goodner, of Washington, D. C., for petitioner.

Howard D. Pack, of Washington, D. C., for respondent.

Before MARIS, CLARK, and JONES, Circuit Judges.

JONES, Circuit Judge.

The question in this case is whether an admitted loss suffered by a taxpayer was an ordinary loss for which he may claim deduction in full in his income tax return or whether it was a loss incurred in the sale or exchange of a capital asset for which his right to deduction is limited under the applicable Revenue Act.

In 1922 the petitioner and three associates purchased, as tenants in common, a piece of valuable real estate, located in the city of Philadelphia, which they proceeded to improve by the erection of a public garage thereon. The funds necessary to pay for the land and building were contributed by the petitioner and his associates in equal shares. In 1924, the co-tenants obtained a loan of $150,000 from a Philadelphia financial institution to which they gave their bond, payable in three years with interest in a penal sum double the amount of the just debt; and, as security for the bond, they gave the obligee their mortgage of the above mentioned real estate upon which the mortgage was a first lien. Appended to the bond was a state-

ment signed, under corporate seal, by the obligee-mortgagee agreeing that "The principal sum, interest, costs and other obligations due on the within bond and the lien of any judgment obtained thereunder or pursuant to the warrant of attorney annexed thereto shall be collectible only out of the property described in the mortgage" accompanying the bond, the mortgagee therein further agreeing that "no other property or estate, real, personal, or mixed, now owned or hereafter owned by the obligors in said bond, or any of them,... shall be liable for the debt, interest, costs or other obligations evidenced by said bond". Among the other obligations in the bond was the obligors' promise to "pay all taxes, charges and claims which may be assessed or levied by any public authority upon the property", etc. The bond was not paid at maturity but was permitted by the obligee to run past due.

In the early part of 1934, the mortgagors then being in default in the payment of principal and interest on the bond and taxes due on the mortgaged property, the mortgagee threatened foreclosure. After negotiations, the parties entered into an agreement on April 23, 1934, whereby the mortgagors agreed, inter alia, to pay the mortgagee $13,000 in cash on account of the delinquent taxes and to turn over the property to the mortgagee on May 1, 1934, with all tenancies therein terminated as of that date. The mortgagee agreed to institute foreclosure proceedings in due course and to cancel and deliver the bond to the obligors upon completion of the foreclosure proceedings. The agreement also specified, as the bond already provided, that the mortgagors should not be personally liable on account of the obligations in the bond. The mortgagors duly made the agreed upon payment on account of the delinquent taxes, and, on May 1, 1934, delivered complete and absolute possession of the property to the mortgagee. Thereafter, on December 30, 1934, the mortgagee instituted foreclosure proceedings and acquired the legal title to the property at the ensuing foreclosure sale on April 1, 1935, for a nominal bid of $75.00. The bond was cancelled by the mortgagee on April 27, 1935.

The Board of Tax Appeals concluded that the petitioner and his co-tenants had abandoned and surrendered the property to the mortgagee on May 1, 1934, and found that the petitioner thereby suffered a loss for the taxable year 1934 in the admitted amount of $38,440.21. The Board further concluded, however, that the agreement of April 23, 1934, between the mortgagors and the mortgagee amounted to an exchange by the petitioner and his associates of their respective interests in a capital asset and that the deduction for loss allowable to the petitioner was limited to $2,000 by § 117(d) of the Revenue Act of 1934, c. 277, 48 Stat. 680, 26 U.S.C.A.Int.Rev.Acts, page 708.

Although the respondent did not petition for a review of the decision below, he now contends, contrary to the Board's finding and conclusion that the loss occurred in 1934, that no loss was sustained by the petitioner in that year and that the loss was not incurred until 1935 when legal title to the property passed from the mortgagors to the mortgagee pursuant to the foreclosure sale. This, the respondent is not in position to urge. While he may support the result below upon any ground available from the record, he may not attack the decision under review, even on grounds asserted before the Board, in an effort to compel a reversal when he has not sought review of the decision or the portion thereof which is adverse to him. LeTulle v. Scofield, 308 U.S. 415, 421, 60 S.Ct. 313, 84 L.Ed. 355. The respondent argues, however, that he does not seek a reversal of the decision of the Board and that, inasmuch as the petitioner is not entitled, in the respondent's view, to any deduction for the year 1934 for the admitted loss, the petitioner cannot be aggrieved by this court's affirmance of the decision as the petitioner would thereby enjoy a deduction to which he is not entitled. This ingenious argument overlooks its own logical implications. If no loss was suffered in 1934, the decision of the Board of Tax Appeals was in error, the $2,000 deduction should not have been allowed and the deficiency assessment should have been greater accordingly. It would therefore follow that, if the respondent's contention were to be adopted, the decision of the Board of Tax Appeals should be reversed for reasons now advanced by the respondent. But, the Board was fully justified in concluding, under the facts found by it, that the petitioner's loss was suffered in 1934; and, in any event, as we have already seen, the respondent, not having sought review of the Board's decision, may not here assail the Board's conclusions.

Coming to the question whether the petitioner's loss is deductible in full as an ordinary loss or whether it is subject to the limitations in amount prescribed by

§ 117(d) of the Revenue Act of 1934 with respect to losses incurred in the sale or exchange of capital assets, it is our opinion that the Board of Tax Appeals erred in concluding that the transaction in the instant case, under the agreement of the parties of April 23, 1934, constituted an exchange by the petitioner of a capital asset. That his interest in the mortgaged property was a capital asset is undisputed. But the question remains whether the petitioner exchanged his asset in the property for anything when, in 1934, he and his co-tenants abandoned and surrendered the property to the mortgagee for the latter's own use and enjoyment and due foreclosure of the mortgage.

The Board of Tax Appeals expressed doubt whether the transaction under the agreement of April 23, 1934 could be considered a sale in view of this court's decision in Commissioner of Internal Revenue v. Freihofer, 102 F.2d 787, 790, 125 A. L.R. 761 where it was held that a sale within the material provisions of the Revenue Acts, respecting losses from sales of capital assets, does not include foreclosure sales for amounts less than the amounts of the foreclosed mortgages. The Board had concluded, and we think rightly, that the mortgagors' abandonment and surrender of the property and the mortgagee's entry thereupon on May 1, 1934 under the agreement calling for the mortgagee's foreclosure of the mortgage in due course very practically and effectively extinguished the petitioner's property right. But, the Board also concluded that, by the transaction, the petitioner exchanged his asset in the property for considerations flowing to him from the agreement of April 23, 1934. Therein, we think, the Board erred. The petitioner's release from liability on account of the obligations of the bond, for which the agreement of April 23, 1934, provided, furnished no consideration to the petitioner and his associates for their action in surrendering the property to the mortgagee. The bond itself had already provided that the obligors' liability for the obligations of the bond should be limited to the property conveyed by the mortgage securing the bond and that no other property of the obligors should be taken in satisfaction of the bond's requirements. This limitation upon the obligee's right to recovery applied to the obligors' promise to pay taxes on the mortgaged property as well as to their promises to pay the principal and interest called for

by the bond. The provision in the agreement relieving the obligors of any personal liability under the bond was no more than a repetition of what the obligee had stipulated in the bond. The agreement of April 23, 1934 did not, therefore, relieve the petitioner from anything for which he was liable to the obligee and, consequently, he received nothing in exchange for his part in turning over the mortgaged property to the mortgagee. The case differs materially from Rogers v. Commissioner of Internal Revenue, 37 B.T.A. 897 (affirmed upon review by the Circuit Court of Appeals for the Ninth Circuit, 103 F.2d 790), upon which the Board relied in support of its action in the present case. In the Rogers case, the taxpayer and her husband, by conveying the pledged property to the holder of their purchase money note, had obtained a cancellation of the note in full and, hence, release from personal liability for a deficiency judgment. It was there considered that the obligors' conveyance of the pledged property to the note holder in consideration of the cancellation and return of their note, which relieved them from further personal liability, constituted a sale of the property by the pledgors. Later, however, it was held by the Circuit Court of Appeals for the Second Circuit, in Bingham v. Commissioner of Internal Revenue, 105 F.2d 971, that a surrender of notes in consideration of the debtors' conveyance to the note holder of property mortgaged to secure the notes does not constitute a sale nor is it an exchange of an asset for an asset because the notes, as assets, could not survive the transaction, as liabilities in the hands of the makers. The decision of the Circuit Court of Appeals in the Bingham case reversed the decision of the Board of Tax Appeals upon which the Board had also relied in its opinion in the present case.

We are of the opinion that the abandonment and surrender of the mortgaged property by the petitioner and his associates, pursuant to the agreement of April 23, 1934, was neither a sale nor an exchange of the petitioner's interest in the property and that his loss on account thereof was an ordinary loss for which he is entitled to deduction in full against gross income for the taxable year unlimited by § 117(d) of the Revenue Act of 1934 which is applicable to losses incurred in sales or exchanges of capital assets.

The decision of the Board of Tax Appeals is reversed.