COMMISSIONER OF INTERNAL REVE-
NUE v. SPRECKELS.

No. 9669.

Circuit Court of Appeals, Ninth Circuit.

June 12, 1941.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Arthur L. Jacobs, Sewall Key, William L. Cary, and Alexander F. Prescott, Sp. Assts. to the Atty. Gen., for petitioner.

Walter Slack and John Elliott Cook, both of San Francisco, Cal., for respondent.

Before WILBUR, GARRECHT, and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

The single question presented by this petition for review, as stated by the Board of Tax Appeals, is whether a transaction in which the taxpayer surrendered promissory notes and collateral security, in consideration of a deed to certain real estate, also mortgaged to her as security for the notes, resulted in a capital loss, an ordinary loss, or a bad debt.

The Board found the facts to be substantially as follows:

June 10, 1930, the taxpayer, a resident of San Francisco, California, loaned to her brother-in-law, Rudolph Spreckels, upon his promissory note, the sum of $100,000, due one day after date with interest at 5%, secured by 10,000 shares of capital stock of Real Property Investment Corporation. Rudolph Spreckels was the owner of all of the capital stock of said corporation. In December, 1930, the taxpayer, considering certain transactions entered into by Rudolph Spreckels impaired the value of the collateral, demanded and received from Rudolph Spreckels as additional security, a mortgage upon certain real property known as the Sobre Vista Farm, located in Sonoma County, California.

By 1934 Rudolph Spreckels had lapsed into default in payment of the interest on the $100,000 note and the taxes on the Sobre Vista Farm became delinquent. In 1933 Alma deBretteville Spreckels paid taxes on the Sobre Vista farm to the amount of $6,650.98, in order to protect her mortgage. She demanded payment of her note and threatened foreclosure. Rudolph offered to convey the Farm to Alma deBretteville Spreckels if she would cancel the note and return to him the 10,000 shares of stock collateral. After investigation of the various factors, she concluded (and the Board found) that the stock of Real Property Investment Corporation was valueless; that Rudolph's financial condition was such that no recovery could have been made by her under a deficiency judgment should she foreclose the mortgage on the Farm. Thereafter, on May 14, 1934, she took a deed to the Farm from Rudolph Spreckels, canceled his indebtedness to her and returned to him the stock in Real Property Investment Corporation. On that date the fair market value of Sobre Vista Farm was $37,152. After receiving the deed, the taxpayer, who kept her books and made her income tax returns on the cash receipts and disbursements basis, charged off on her books the indebtedness of Rudolph Spreckels.

As noted above, Alma deBretteville Spreckels paid out $6,650.98 in taxes in 1933 to protect her security. On May 14, 1934, there were additional taxes accrued of $1,220.17, insurance premium expired of $86.25, which, with the $100,000 originally loaned, amounted to a total debt of $107,-957.39. From that amount the taxpayer deducted $37,152, as the fair market value of the farm, plus the portion of the insurance premiums paid, unexpired on May 14, 1934, of $84.38, making a total of $37,236.-38. The respondent charged off the remainder of $70,721.01 during the calendar

year 1934, and claimed that sum as a deduction as a bad debt in her income tax return for that year. The Commissioner disallowed the deduction, but the Board of Tax Appeals concluded in favor of the taxpayer and permitted the deduction. The matter is before us on the Commissioner's petition for review.

The applicable statute, § 23 of the Revenue Act of 1934, 48 Stat. 680, 688, 689, 26 U.S.C.A.Int.Rev.Acts, pages 672, 673, provides that "In computing net income there shall be allowed as deductions:

\* \* \* \* \* \*

"(e) Losses by Individuals. In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

"(1) if incurred in trade or business; or

"(2) if incurred in any transaction entered into for profit, though not connected with the trade or business;

\* \* \* \* \* \*

"(j) Capital Losses. Losses from sales or exchanges of capital assets shall be allowed only to the extent provided in section 117(d).

"(k) Bad Debts. Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction."

Section 117(d) of said Act, 48 Stat. 715, 26 U.S.C.A. Int.Rev.Acts, page 708, referred to above, permits losses from sales or exchanges of capital assets to be deducted only to the extent of $2,000 plus the gains from such sales or exchanges. Article 23(k)—3 of Regulations 86, promulgated under the Revenue Act of 1934, provides (as was provided in prior years by Article 193 of Regulations 74–75 and 77):

"If mortgaged or pledged property is lawfully sold (whether to the creditor or another purchaser) for less than the amount of the debt, and the mortgagee or pledgee ascertains that the portion of the indebtedness remaining unsatisfied after such sale is wholly or partially uncollectible, and charges it off, he may deduct such amount (to the extent that it constitutes capital or represents an item the income from which has been returned by him) as a bad debt for the taxable year in which it is ascertained to be wholly or partially worthless and charged off. In addition, if the creditor buys in the mortgaged or pledged property, loss or gain is realized measured by the difference between the amount of those obligations of the debtor which are applied to the purchase or bid price of the property (to the extent that such obligations constitute capital or represent an item the income from which has been returned by him) and the fair market value of the property. The fair market value of the property shall be presumed to be the amount for which it is bid in by the taxpayer in the absence of clear and convincing proof to the contrary. If the creditor subsequently sells the property so acquired, the basis for determining gain or loss is the fair market value of the property at the date of acquisition.

"Accrued interest may be included as part of the deduction only if it has previously been returned as income."

In this factual situation, had Mrs. Spreckels foreclosed her mortgage and bought in the mortgaged property for the sum of $37,-152, found to be the fair market value of the mortgaged property, she would, under Article 23(k)—3 of Regulations 86, have been entitled to a bad debt deduction to the extent claimed herein. The loss realized would have been recognized and allowed under the regulations. 3 Paul and Mertens, Law of Income Taxation, § 28.78, pp. 467–469; Commissioner v. Friehofer, 3 Cir., 102 F.2d 787, 125 A.L.R. 761. Compare, however, Internal Revenue Cum.Bull., 1937-2, p. 138, 139 (XVI—40—8952, I.T. 3121). Is Mrs. Spreckels' failure to adhere to the form of statutory foreclosure of such importance as to bar her right to the deduction? We also inquire whether the transaction consummated the "sale or exchange" of a capital asset, or whether it amounted to a simple "purchase," with, as yet, no realized gain or loss to the taxpayer.

Our first inclination is that this "purchase" theory is the answer to the problem, with the extinguishment of the mortgagor's indebtedness serving as the consideration, but the question is not to be resolved so simply. Article 23(k)—3 of Regulations 86, which recognizes that a loss may be realized by a foreclosing mortgagee, is to be taken into the reckoning.

The Commissioner, when this case was before the Board of Tax Appeals, urged upon the Board that the precise question for determination herein had been before the Board in the Appeal of Harry Payne Bingham v. Commissioner, 38 B.T.A. 913, in which the Board's decision had favored

the Commissioner, and that the facts in the Spreckels case and the Bingham case were "almost precisely parallel." The Board's opinion in this (the Spreckels) case recites that Mrs. Spreckels stated the facts in the two cases were "indistinguishable * * * but strongly urged error" in the Board's decision in the Bingham case. Subsequently to the submission of the instant case to the Board for decision, the Circuit Court of Appeals for the Second Circuit handed down its opinion in Bingham v. Commissioner, 105 F.2d 971, which had been brought before it, reversing the Board's decision. With the parties to this case in agreement before the Board as to the controlling effect of the Bingham case, the Board followed the rule of that case and entered its decision in favor of Mrs. Spreckels. The Commissioner now suggests to this court that there is one distinction between the Bingham and the Spreckels cases, "namely, that as consideration for the deed given by the mortgagor the taxpayer-mortgagee not only cancelled the mortgagor's indebtedness (as in the Bingham case) but also transferred certain shares of stock which she held as collateral for the loan and which the Board of Tax Appeals has found to be worthless." Because of the worthlessness of this stock we think this is a distinction without a difference and do not further concern ourselves with this item. We will now examine the Bingham case in some detail.

In 1926 Bingham sold Florida real estate to one Copp for $500,000, of which $50,000 was paid in cash and $450,000 by the execution of four promissory notes, secured by a mortgage on the real estate, due March 15, 1926, 1927, 1928, and 1929, respectively. Bingham returned the entire profit on the sale in 1926. Copp paid the first note, part of the principal on the remaining notes, and the interest on all notes up to March 15, 1931. After September 15, 1931, he was unable and failed to make further payments on either the principal or the interest. Bingham attempted to collect the notes or secure reconveyance of the real estate. Unsuccessful, Bingham commenced foreclosure; later, a settlement was effected, whereby Copp reconveyed the property to Bingham at an appraised value of $242,500, and Bingham executed a satisfaction of the mortgage and canceled and surrendered the unpaid notes to Copp. The question was whether the result of the transaction was a capital loss to Bingham, an ordinary loss, or a bad debt. The Board's opinion, purporting to follow Rog-

ers v. Commissioner, 37 B.T.A. 897, held the transaction constituted a sale or exchange of capital assets and that the loss was a capital loss. On petition to review in the Circuit Court of Appeals for the Second Circuit, that court said (105 F.2d 971, 972):

"* * * It is said [by the Board] that Copp's interest in the real estate which he re-conveyed to the petitioner, an admitted capital asset, was sold for the notes which, though cancelled and returned to the maker, were capital assets also. The nub of the controversy is whether or not the notes were in the stated circumstances such assets within the meaning of the statute. * * *

"What may have been property in the hands of the holder of the notes simply vanished when the surrender took place and the maker received them. He then had, at most, only his own obligations to pay himself. Any theoretical concept of a sale of the notes to the maker in return for what he gave up to get them back must yield before the hard fact that he received nothing which was property in his hands but had merely succeeded in extinguishing his liabilities by the amounts which were due on the notes. There was, therefore, no sale of the notes to him in the ordinary meaning of the word and no exchange of assets for assets since the notes could not, as assets, survive the transaction. That being so, such a settlement as the one this petitioner made involved neither a sale nor an exchange of capital assets within the meaning of the statute."

The decision of the Board of Tax Appeals was reversed.

In view of the reliance placed upon the Board's decision in the Bingham case by the Commissioner when the instant case was before the Board for consideration, and the taxpayer's acknowledgment thereof the similarity, and our own conclusion thereof, it would appear that the Bingham case should be controlling in the circumstances. It is suggested, too, that our decision in Rogers v. Commissioner, 103 F.2d 790, certiorari denied, 308 U.S. 580, 60 S. Ct. 98, 84 L.Ed. 486, handed down prior to the filing of the opinion in the Bingham case by the Court of Appeals for the Second Circuit needs to be reconciled with that case. The two decisions upon hasty examination may appear conflicting, but closer inspection will not bear this out. In the Rogers case the taxpayers purchased certain property by the payment of cash,

the assumption of a mortgage, and the giving of their own promissory note for the balance. Thereafter, they paid off the note secured by the mortgage which they had assumed, but later when the note which they had given (which was secured by a deed of trust) fell due, they declined to make payment and offered to convey the property to the holder of the note if the latter would cancel and surrender the note. This was agreed to and the transaction consummated. The taxpayers claimed the unrecovered cash investment as an ordinary loss; the Board held the loss to be a capital net loss recognizable only to a certain specified percentage. We held the transaction amounted to a "sale" of an admitted capital asset and affirmed the Board. In answer to the contention that the transaction was not a "sale" because the taxpayers had received nothing, we pointed out that in California the extinguishment of a pre-existing debt constitutes a valuable consideration for a sale, and then said (103 F.2d page 792):

"There was no showing or intimation that the petitioners were financially unable to pay the indebtedness. The situation is analogous to one where the mortgagor sells the property to a third party for a sum equal to the amount due on his note and then pays the note with that money. The result to the taxpayer would be exactly the same as here, although it could not there be maintained that the taxpayer received nothing of value for the property."

We observed that "the property was the medium through which the debt was paid."

If the mortgagor in the instant case had sold the Farm at its fair market value to a third person and then used the proceeds of the sale to pay the note, we would have a realized loss suffered by the mortgagee to the extent of the difference between the fair market value of the property and the amount due on the note. The "sale" would have been between the mortgagor and the third person, to which the mortgagee was not a party. The money received by the mortgagee would have been received in payment of an obligation, which is not a "sale." Fairbanks v. United States, 9 Cir., 95 F.2d 794, 796, affirmed, 306 U.S. 436, 59 S.Ct. 607, 83 L.Ed. 855. "The property was the medium through which the debt was paid." The difference between the sum due and the fair market value of the property amounted to a realized bad debt loss and was deductible. "If the mortgagor sells the property to an outsider for cash, and

then uses the cash to compromise the mortgage debt, then according to I.T. 3121, the creditor may deduct the unpaid balance as an ordinary loss. If the argument of equivalent results is to be applied, there is no reason for a different treatment if the mortgagee accepts the property (having a value less than the debt) directly from the mortgagor instead of receiving cash which has been realized by the mortgagor upon a sale to an outsider." Randolph E. Paul in 48 Yale Law Journal, 1315, 1327.

Judge Parker of the Fourth Circuit, in Pender et al. v. Commissioner, 110 F.2d 477, 479, distinguishes the Rogers and the Bingham cases by saying that the Bingham case "involved a bad debt deduction by a note holder who had accepted a conveyance of mortgaged property in satisfaction of the debt. It is perfectly clear that a note holder in such case has neither sold nor exchanged property, but has merely made a collection on the indebtedness due him."

In Commissioner v. Electro-Chemical Engraving Co., Inc., 2 Cir., 110 F.2d 614, affirmed, 311 U.S. 513, 61 S.Ct. 372, 85 L. Ed. ——, the question was whether a loss sustained by the taxpayer through sale of its factory by foreclosure should be limited by the capital loss provision of the Revenue Act of 1934, or whether the taxpayer was entitled to deduct the actual loss realized. The Board of Tax Appeals reached the latter conclusion, but the Court of Appeals reversed, citing Rogers v. Commissioner, supra. The court said (110 F. 2d page 616):

"Bingham v. Commissioner, 2 Cir., 105 F.2d 971 is not in conflict with the decision we have reached. In the Bingham case it was held that the vendor-mortgagee might deduct his full loss resulting from cancellation of notes secured by a purchase money mortgage and taking back the property in exchange. It is true that the situation somewhat resembled one where there is a foreclosure sale without deficiency judgment. But the Bingham case involved taxation of the mortgagee, who could be said only to have 'sold' the notes. That a cancellation of notes is not a 'sale' of them to their maker was the ground the court relied on. It did not determine that the mortgagor did not 'sell' the real estate to the mortgagee, with the cancellation of the notes as consideration. In Rogers v. Commissioner, 9 Cir., 103 F.2d 790, the Ninth Circuit held in similar circumstances that the mortgagors had effected a sale and con-

fined their deductible loss to the statutory limitation. Between a situation adjusted by cancellation of the mortgage notes in return for a 'voluntary' deed of the land, when the adjustment is made with knowledge of the possible resort to foreclosure, and a situation where foreclosure is actually resorted to, there would seem to be little difference. In both situations, the result is the same: the mortgagee receives back the land, and the mortgagor is freed of liability on the mortgage notes, to some extent at least."

See Commissioner v. National Bank of Commerce, etc., 5 Cir., 112 F.2d 946, 947; Bowles Lunch, Inc. v. United States, Ct.Cl., 33 F.Supp. 235, 240. Compare Polin v. Commissioner, 3 Cir., 114 F.2d 174; Hale v. Helvering, 66 App.D.C. 242, 85 F.2d 819.

Aside from the distinctions and notwithstanding the niceties and refinements in the decisions herein quoted, cited, and discussed, Mrs. Spreckels' loss would be considered, by the average business man and layman, as a bad debt loss. Common sense indicates the same conclusion and should prevail. Rhodes v. Commissioner, 6 Cir., 100 F.2d 966, 969; Commissioner v. National Bank of Commerce, etc., supra; Helvering v. Hindes, 4 Cir., 74 F.2d 537, 539.

The decision of the Board of Tax Appeals is affirmed.