NATIONAL–STANDARD COMPANY, Petitioner-Appellee,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.

No. 83–1679.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 15, 1984.

Decided Dec. 12, 1984.

See also 80 T.C. 551.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Jonathan S. Cohen, Elaine F. Ferris, argued, Fred T. Goldberg, Jr., Chief Counsel, I.R.S., Washington, D.C., for respondent-appellant.

Warren C. Seieroe, McDermott, Will & Emery, James L. Malone, argued, Charles Huber, Lowell D. Yoder, Chicago, Ill., for petitioner-appellee.

Before EDWARDS and CONTIE, Circuit Judges, and WEICK, Senior Circuit Judge.

CONTIE, Circuit Judge.

The Commissioner appeals from a decision of the United States Tax Court in favor of National-Standard Company on National-Standard's petition for redetermination of a federal income tax deficiency assessed by the Commissioner. We have jurisdiction pursuant to 26 U.S.C. § 7482. We affirm.

**I.**

On September 17, 1970, National-Standard entered into a loan agreement pursuant to which the company borrowed 250,-000,000 Luxembourg francs from Caisse E' Apargne de L'Etat, a Luxembourg bank, between December 31, 1970 and December 20, 1971. The francs had a U.S. dollar value of $5 million at the exchange rate of one franc for .02 dollars when the parties entered into the loan agreement. The francs were immediately reinvested in a Luxembourg company, FAN International S.A.R.L., a joint venture between National-Standard and Acieries Reunies de Burbach-Eich-Dudelange, S.A. On February 28, 1974, National-Standard borrowed 250,000,-000 Belgian francs from Society Generale Alsacienne de Banque, a Belgian bank, to pay National-Standard's obligation to Caisse, the Luxembourg bank.[1] The francs had a dollar value of $6,152,000 at an exchange rate of one franc for .02461 dollars. On December 26, 1974, National-Standard purchased 266,944,444 Belgian francs from the First National Bank of Chicago at a cost of $7,207,499.99, at an exchange rate of one franc for .027 dollars.

For federal income tax purposes, National-Standard claimed an ordinary loss pursuant to 26 U.S.C. § 165(a) of $1,152,500 for fiscal year 1974 (ending September 30, 1974) and $597,500 for fiscal year 1975. On April 3, 1980, the Commissioner issued a notice of deficiency assessing National-Standard $170,971 for fiscal 1974 and $149,350 for fiscal 1975. The Commissioner assessed the deficiencies on the ground that the losses from repayment of the loans arose from "exchanges of capital assets which result in capital losses rather than ordinary losses as reported."

On June 3, 1980, National-Standard petitioned the United States Tax Court for a redetermination of the deficiencies set forth by the Commissioner. On June 29, 1983, the court entered a decision in favor of National-Standard holding that the company's losses were ordinary rather than capital. The court held that, although National-Standard had acquired and held the francs as capital assets, the satisfaction of an indebtedness does not constitute "sale or exchange," which is required to establish a capital loss. The Commissioner appeals.

**II.**

The sole issue for determination in this appeal is whether the loss suffered by National-Standard constitutes a capital loss or an ordinary loss. A transaction resulting in a capital loss must involve a "sale or exchange" of a "capital asset."[2] *Harris v. United States*, 431 F.Supp. 1173, 1178 (E.D.Va.), *aff'd*, 565 F.2d 156 (4th Cir.1977); *Michtom v. United States*, 573 F.2d 58, 63, 216 Ct.Cl. 12 (1978), *vacated on other grounds*, 626 F.2d 815, 224 Ct.Cl. 407 (1980); *KVP Sutherland Paper Co. v. United States*, 344 F.2d 377, 379, 170 Ct.Cl. 215 (1965). A "sale or exchange" is essential to the existence of a capital transaction. *Estate of Nordquist v. Commissioner of Internal Revenue*, 481 F.2d 1058, 1061 (8th

---

**1.** The parties agree that during these transactions Belgian and Luxembourg francs had equivalent U.S. dollar values.

**2.** 26 U.S.C. § 165(f) provides that "[l]osses from sales or exchanges of capital assets shall be allowed only to the extent allowed in sections 1211 and 1212."

Cir.1973); *Riddell v. Scales*, 406 F.2d 210, 212 (9th Cir.1969); *Ackerman v. United States*, 335 F.2d 521, 526–27 (5th Cir.1964); *Breen v. Commissioner of Internal Revenue*, 328 F.2d 58, 64 (8th Cir.), *cert. denied*, 379 U.S. 823, 85 S.Ct. 48, 13 L.Ed.2d 34 (1964); *AMP, Inc. v. United States*, 492 F.Supp. 27, 31 (M.D.Pa.1979). While the tax court's findings of fact may not be set aside unless clearly erroneous, *Ohio Teamsters Educational and Safety Training Trust Fund v. Commissioner of Internal Revenue*, 692 F.2d 432, 435 (6th Cir.1982), the characterization of a transaction for federal tax purposes is a question of law fully reviewable by this court. *Crowley, Milner & Company v. Commissioner of Internal Revenue*, 689 F.2d 635, 637 (6th Cir.1982); *Estate of Franklin v. Commissioner of Internal Revenue*, 544 F.2d 1045, 1047 n. 3 (9th Cir.1976); *Union Planters National Bank of Memphis v. United States*, 426 F.2d 115, 117 (6th Cir.1970), *cert. denied*, 400 U.S. 827, 91 S.Ct. 53, 27 L.Ed.2d 56 (1970).

■■■ The Commissioner concedes that no "sale" is present in this case, but contends that the transfer of francs from the banks to National-Standard and the transfer back constituted an "exchange." An "exchange" has been defined as the reciprocal transfer of property. *Helvering v. Flaccus Leather Co.*, 313 U.S. 247, 249, 61 S.Ct. 878, 879, 85 L.Ed. 1310 (1941); *Michtom*, 573 F.2d at 63. "For there to be a sale or exchange there must be a receipt of something valuable." *Ackerman*, 335 F.2d at 527. Therefore, where one party to the transaction receives neither property nor money or its equivalent, there is no "sale or exchange." [3]

■■ The tax court's decision in this case rested on the rule that payment and discharge of a bond or obligation is not a "sale or exchange." [4] *Fairbanks v. United States*, 306 U.S. 436, 437, 59 S.Ct. 607, 608, 83 L.Ed. 855 (1939). The *Fairbanks* rule has been strictly followed. *Dennis v. Commissioner of Internal Revenue*, 473 F.2d 274, 279 (5th Cir.1973); *Pounds v. United States*, 372 F.2d 342, 349 (5th Cir. 1967); *Breen*, 328 F.2d at 64; *Wener v. Commissioner of Internal Revenue*, 242 F.2d 938, 942 (9th Cir.1957) (*Fairbanks* applies to all debts); *Osenbach v. Commissioner of Internal Revenue*, 198 F.2d 235, 236–37 (4th Cir.1952); *Commissioner of Internal Revenue v. Spreckels*, 120 F.2d 517, 520 (9th Cir.1941); *Lee v. Commissioner of Internal Revenue*, 119 F.2d 946, 948 (7th Cir.1941); *Bradshaw v. United States*, 683 F.2d 365, 379, 231 Ct.Cl. 144 (1982); *Gillin v. United States*, 423 F.2d 309, 313, 191 Ct.Cl. 172 (1970); *KVP Sutherland Paper Co.*, 344 F.2d at 382. Payment of a debt does not constitute a "sale or exchange" because the maker of the note or the debtor acquires no property in the transaction other than discharge of the obligation. *Saunders v. United States*, 450 F.2d 1047, 1049 n. 6 (9th Cir.1971) ("[T]he extinguishment of an obligation does not ordinarily constitute a sale or exchange unless it adds to the obligor's property rights."); *Felin v. Kyle*, 102 F.2d 349 (3d Cir.1939) (in payment of a debt, no property is transferred to debtor); *Billy Rose's Diamond Horseshoe, Inc. v. United States*, 322 F.Supp. 76, 80 (S.D.N.Y.), *aff'd*, 448 F.2d 549 (2d Cir.1971) ("[T]he termination of a taxpayer's obligation for cash without a transfer of property to the taxpayer is not a 'sale or exchange.'")

Any theoretical concept of a sale of the notes to the maker in return for what he gave up to get them back must yield before the hard fact that he received nothing which was property in his hands but had merely succeeded in extinguishing his liabilities by the amounts which were due on the notes. There was,

---

3. The banks, holders of National-Standard's obligations, clearly received property in the transactions since francs, as foreign currency, constitute property. *Gillin v. United States*, 423 F.2d 309, 311, 191 Ct.Cl. 172 (1970); *KVP Sutherland Paper Co.*, 344 F.2d at 379.

4. Since there are no material differences between the Internal Revenue Codes of 1939 and 1954 regarding the requirement of "sale or exchange," *KVP Sutherland Paper Co.*, 344 F.2d at 379, cases applying the 1939 Code are relevant in this case.

therefore, no sale of the notes to him in the ordinary meaning of the word and no exchange of assets for assets since the notes could not, as assets, survive the transaction.

*Bingham v. Commissioner of Internal Revenue*, 105 F.2d 971, 972 (2d Cir.1939). *See also Appleman v. United States*, 176 F.Supp. 706, 708 (S.D.N.Y.1959).

■ Likewise, the fact that property rather than cash is transferred to discharge the debt does not establish an "exchange." In *Stoddard v. United States*, 49 F.Supp. 641 (D.Mass.1943), the taxpayer owned an obligation in the form of a certificate which was discharged by the transfer of securities and other assets. The court, finding no "sale or exchange," held that the *Fairbanks* rule applies regardless of whether the debtor discharges the debt by payment of cash or property. *Id.* at 644. *See also Spreckels*, 120 F.2d at 520 (no sale where promissory notes surrendered in exchange for deed to real estate).

In *Gillin v. United States*, 423 F.2d 309, 191 Ct.Cl. 172 (1970), the taxpayer borrowed Canadian dollars in return for promissory notes and repaid the loans at a time when, due to the fluctuation in exchange rates, he realized a gain in U.S. dollars in the transaction. The court of claims held that the repayment of the debt did not constitute a sale or exchange and that, therefore, the gain was taxable as ordinary income. 423 F.2d at 314.

■ We hold that National-Standard's discharge of its debt to the banks was not a "sale or exchange." The fact that francs are property, unlike the U.S. dollar, does not affect our analysis since, regardless of the property National-Standard transferred, National-Standard received nothing in the transaction other than discharge of its debt. While the form of payment tendered—whether dollars, francs, or other property—may affect an inquiry into whether the property involved is a capital asset, the form of repayment does not alter the fact that the payment involves discharging a debt.

Although the Commissioner contends that the transaction between the banks and National-Standard should be viewed as an exchange of francs for francs rather than as a discharge of an obligation, such an analysis would deprive *Fairbanks* of viability. Under this analysis, any discharge of a debt could be cast as an exchange of the property borrowed for the property returned. However, no court applying *Fairbanks* has adopted such an analysis. Further, this court has held that gain realized in paying an obligation in foreign currency as a result of a change in exchange rates is attributable to paying the debt. *Kentucky & Indiana Terminal Railroad Company v. United States*, 330 F.2d 520, 524 (6th Cir.1964). National-Standard's loss due to a shift in exchange rates is likewise attributable to paying its debt.

"[C]ourts must look to the substance, rather than the form, of transactions to determine whether payments to a taxpayer constitute capital gain or ordinary income." *Cline v. Commissioner of Internal Revenue*, 617 F.2d 192, 195 (6th Cir.1980). National-Standard required the francs for investing in the joint venture [5] and negotiated the loan agreement which provided for interest characteristic of such agreements. While the Commissioner attempts to cast the transaction as a francs-for-francs transfer, nothing in this case suggests that National-Standard's transfer of its obligation to repay in return for the francs and the subsequent transfer of francs to discharge its obligation was anything other than a bona fide loan agreement. "The sale or exchange must be the event which gave rise to the gain in question." *Pounds*, 372 F.2d at 349. National-Standard's losses arose from its repayment of the francs to discharge its debt, and the earlier acquisitions of the francs were not the events out of which the losses arose.

---

5. The parties stipulated that National-Standard was required to borrow the funds to invest in FAN International from a foreign source

"[b]ecause of certain restrictions on overseas investments imposed by the United States on domestic corporations."

Since the absence of a sale or exchange establishes that the losses were not capital losses, we do not address National-Standard's contention that the francs were not capital assets.

For the reasons expressed above, the judgment of the United States Tax Court is AFFIRMED.